WILSON FIELDS *v.* STATE OF INDIANA

[No. 1-378A75. Filed November 21, 1978. Rehearing denied
December 20, 1978. Transfer denied March 26, 1979.]

*Harriette Bailey Conn, [Mrs.],* Public Defender of Indiana, *David P. Fruend,* Deputy Public Defender for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Kenneth R. Stamm,* Deputy Attorney General, for appellee.

## STATEMENT OF CASE

LOWDERMILK, J. — Defendant-appellant Wilson Fields appeals from his convictions for resisting and interfering with a police officer,[1] disorderly conduct,[2] and assault and battery.[3]

## FACTS

On July 13, 1976 Robert Miller, the Chief of Police of the City of Rushville was supervising the placing of no parking signs along the street in front of Wilson Fields' home. As a result Wilson Fields was told by Chief Miller that he would have to move his pick-up truck, which had been parked in front of his home, to another location. Fields complied with the request and moved his truck further down the street to a location where parking was not prohibited.

Later that day Chief Miller noticed that Fields' pick-up, though not in a no parking zone, had special machinery license plates. In that he felt that such special machinery plates were improper for a pick-up Chief Miller ordered a Rushville police officer by the name of Omer Fields to call a tow truck and have Wilson Fields' pick-up removed from the city streets. As the wrecker, which Officer Fields had called, was backing up to hook onto the pick-up, Wilson Fields appeared on the scene and drove his wrecker between his pick-up and the wrecker which had been summoned by the police.

When Wilson Fields got out of his wrecker to hook on to his pick-up Officer Fields told him to get out of the way, that a wrecker had already been called to tow the pick-up. Officer Fields also told Wilson Fields that he would be arrested for interfering with a police officer if he did not get out of the way. When Wilson Fields continued to hook up his pick-up to his wrecker, Officer Fields placed him under arrest for interfering with a police officer and attempted to apprehend him.

Within moments thereafter Chief Miller appeared on the scene to aid Officer Fields in his attempt to subdue Wilson Fields. Wilson Fields had

1. See IC 1971, 35-21-4-1 (Burns Code Ed.) (Repealed October 1, 1977).
2. See IC 1971, 35-27-2-1 (Burns Code Ed.) (Repealed October 1, 1977).
3. See IC 1971, 35-1-54-4 (Burns Code Ed.) (Repealed October 1, 1977).

squatted down behind his wrecker and was holding onto the towing cable when both Chief Miller and Officer Fields grabbed him and attempted to pull him away from the cable and place handcuffs on him. When their initial efforts failed to dislodge Wilson Fields the police officers sprayed chemical mace on his face. Shortly thereafter, David Clevenger, a deputy sheriff, arrived on the scene. With Clevenger's assistance the officers were able to subdue Wilson Fields and place handcuffs on him.

Before Wilson Fields was placed in the police car, he, while handcuffed, kicked at Chief Miller and landed a glancing blow to Chief Miller's chin. From the time that he had arrived on the scene until after he had been placed in the police car Wilson Fields yelled at, threatened, and swore at the police officers present. A large crowd of people assembled to watch the disturbance.

Wilson Fields was charged with resisting and interfering with a police officer, disorderly conduct, and assault and battery. Verdicts of guilty were rendered on all three charges, and Wilson Fields was sentenced to be imprisoned for six months on each charge, the sentences to be served concurrently, and was fined $100 for the assault and battery and $50 for the disorderly conduct.

## ISSUES

The issues which have been presented for review are as follows:

1.    Whether Wilson Fields' arrest for interfering with a police officer was an illegal arrest.

2.    Whether Wilson Fields had the right to resist what he alleged to be an illegal arrest.

3.    Whether the trial court erred in refusing to give Wilson Fields' tendered Instruction No. 4 to the jury.

4.    Whether the court erred in sentencing him upon both the assault and battery conviction and on the disorderly conduct conviction.

### Issue One

Wilson Fields contends that he had a legal right to remove his own pick-up truck, that he was not interfering with Officer Fields' official

duties when he (Wilson Fields) attempted to remove his pick-up, and that his initial arrest for interfering with a police officer was illegal.

In that Wilson Fields' pick-up truck displayed the wrong kind of license plate, but was not otherwise illegally parked, the police officers should have treated the truck as an abandoned vehicle.[4] Concerning the removal of an abandoned vehicle, IC 1971, 9-9-1.6-8 (Burns Supp. 1977) provides:

"9-9-1.6-8. Notice tag, removal and storage of vehicles.—Any officer who finds a vehicle or parts to be abandoned, as defined in section 4[9-9-1.6-4] of this chapter, and therefore in violation of its provisions, shall attach thereto in a prominent place, a notice tag which shall contain the following information:

(a) the date, time, officer's name, public agency and address and telephone number to contact for information: (sic)

(b) that the vehicle or parts are considered abandoned;

(c) that the vehicle or parts will be removed seventy-two [72] hours thereafter;

(d) that the owner will be held responsible for all costs incidental to the removal and disposal; and

(e) that the owner may avoid costs by removal of the vehicle or parts within seventy-two [72] hours.

If the tagged vehicle or parts are not removed within that seventy-two [72] hours period, the officer shall prepare a written description of the vehicle or parts including information on the con-

---

4. IC 1971, 9-9-1.6-4(b)(1) (Burns Supp. 1977) provides:

"(B) 'Abandoned' or 'abandon' when used in conjunction with the term vehicle means:

(1) Any vehicle located on public property which does not have lawfuly affixed thereto or displayed thereon a valid unexpired license plate and inspection sticker, if required, permitting its operation upon the highways of the state of Indiana;

* * *"

We note that IC 1971, 9-9-5-5 (Burns Code Ed.) gives a police officer the right to take an improperly registered vehicle into custody. However, unless the vehicle is otherwise in violation of law the officer may take the vehicle into custody only by following the procedure set forth in IC 1971, 9-9-1.6-8 (Burns Supp. 1977) for the removal of improperly registered vehicles. Any conflict between two statutes must be resolved in favor of the latter of the two in that it represents the legislature's latest statement on the matter.

dition, missing parts and other facts which would substantiate whether the market value is more or less than one hundred dollars [$100]. Photographs may be taken to describe the condition of the vehicle or parts. The officer shall thereupon require the vehicle or parts to be towed to an area approved by the bureau for storage. [IC 1971, 9-9-1.6-8, as added by Acts 1975, P.L. 108, § 1, p. 688.]"

The facts in the case at bar clearly show that the Rushville police had no legal right to remove Wilson Fields' pick-up at the time they attempted to do so, nor did they have the legal right to prohibit Wilson Fields from removing his pick-up himself. In fact, IC 9-9-1.6-8, *supra,* specifically states that the owner of an abandoned vehicle may avoid removal and storage costs by moving the abandoned vehicle himself.

Officer Fields had no legal duty to remove Wilson Fields' pick-up at that time; in fact, he had a legal duty not to. Therefore, when Wilson Fields attempted to tow away his pick-up, Officer Fields exceeded his legal authority in prohibiting him from doing so. IC 35-21-4-1, *supra,* provides:

". . . Whoever shall forcibly assault, resist, oppose, obstruct, prevent, impede or interfere with any peace or police officer of this state, or any person assisting him, while such officer is arresting or attempting to arrest any person, or *while such officer is engaged in the execution of any of the duties of such peace or police officer*, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not to exceed one hundred dollars [$100] or imprisoned not more than six [6] months, or both. . . ." (Our emphasis)

Since Wilson Fields was not interfering with the execution of Officer Fields' legal duties, his arrest for interfering with a police officer was illegal.

*Issue Two*

Owing to our holding in Issue One, that Wilson Fields' initial arrest for interfering with a police officer was illegal, we must now determine what effect that illegal arrest had upon Wilson Fields' subsequent actions. It is Wilson Fields' contention that he had the right to offer reasonable resistance to prevent his being arrested illegally. The only Indiana cases which we have found that address this matter are *Heichelbech v. State* (1972), 258 Ind. 334, 281 N.E.2d 102, and *Williams*

*v. State* (1974), 160 Ind.App. 294, 311 N.E.2d 619. See also *Annotation*, 44 A.L.R.3d 1078. In *Heichelbech, supra,* the defendant had been lawfully arrested for driving while under the influence of alcohol, but the defendant resisted the arrest by wrestling with the arresting officer. In *Williams, supra,* the defendant was arrested without a warrant for an alleged assault and battery, which occurred outside the presence of the arresting officer, but the defendant used excessive force (a deadly weapon) in resisting the arrest.

In *Heichelbech, supra,* and in *Williams, supra,* both this court and our Supreme Court recognized that at common law a person was permitted to resist an unlawful arrest with reasonable force. However, both the court in *Heichelbach, supra,* and the court in *Williams, supra,* quickly pointed out that recent cases have held that a private citizen may not use force in resisting a peaceful arrest by a person which he knows or has good reason to know was a police officer performing his duties, regardless of whether the arrest was legal or illegal.

We are of the opinion that the common law rule is outmoded in our modern society. A citizen, today, can seek his remedy for a policeman's unwarranted and illegal intrusion into the citizen's private affairs by bringing a civil action in the courts against the police officer and the governmental unit which the officer represents. The common law right of forceful resistance to an unlawful arrest tends to promote violence and increases the chances of someone getting injured or killed. In *Miller v. State* (1969), Alaska, 462 P.2d 421, 426-427, the Supreme Court of Alaska stated the following:

> "Lastly, we take up the question of whether one can resist a peaceful arrest even though the arrest is unlawful. The weight of authoritative precedent supports a right to repel an unlawful arrest with force. . . . This was the rule at common law. It was based upon the proposition that everyone should be privileged to use reasonable force to prevent an unlawful invasion of his physical integrity and personal liberty.
>
> But certain imperfections in the functioning of the rule have brought about changes in some jurisdictions. A new principle of right conduct has been espoused. It is argued that if a peace of-

ficer is making an illegal arrest but is not using force, the remedy of the citizen should be that of suing the officer for false arrest, not resistance with force. The legality of a peaceful arrest may frequently be a close question. It is a question more properly determined by courts than by the participants in what may be a highly emotional situation. Because officers will normally overcome resistance with necessary force, the danger of escalating violence between the officer and the arrestee is great. What begins as an illegal misdemeanor arrest may culminate in serious bodily harm or death.

The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined. Along with increased sensitivity to the rights of the criminally accused there should be a corresponding awareness of our need to develop rules which facilitate decent and peaceful behavior by all.

The common law rule was developed in a time when self-help was a more necessary remedy to resist intrusions upon one's freedom.

'[It] was developed largely during a period when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery. Further, conditions in English jails were then such that a prisoner had an excellent chance of dying of disease before trial.' Warner, 'The Uniform Arrest Act,' 28 Va. L. Rev. 315 (1942).

\* \* \*

To us the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders. The old common law rule has little utility to recommend it under our conditions of

life today. We hold that a private citizen may not use force to resist peaceful arrest by one he knows or has good reason to believe is an authorized peace officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion." (Footnote omitted)

In the case at bar we hold that although Wilson Fields' initial arrest was unlawful, he was not entitled to forcefuly resist Officer Fields' attempt to apprehend him. We note that this appeal does not address issues that arise when an arrestee apprehends that the arresting officer is using excessive force and that unless the arrestee defends himself, he is likely to suffer great bodily harm or death. Nor does this appeal deal with issues that are presented when an unlawful arrest is attempted by one not known to be a law enforcement officer. Our holding is limited to the fact situation presented in the case at bar.

*Issue Three*

Wilson Fields contends that the trial court erred in denying his tendered Instruction No. 4, which would have instructed the jury that Fields had the right to forcefully resist an illegal arrest. Owing to our resolution of Issue Two we hold that the trial court did not err in refusing to give Fields' tendered Instruction No. 4 to the jury in that it was an incorrect statement of law.

*Issue Four*

Fields contends that the trial court erred in sentencing him upon both of the convictions of disorderly conduct and assault and battery in that both offenses arose from the same set of operative facts. The test for determining whether or not sentencing for two or more offenses violates the defendant's right not to be placed in jeopardy twice for the same offense was set forth by our Supreme Court in *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, as follows:

"... The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances ... In other words, the fact that the offenses stem from the same act merely informs us that there is a potential problem; it is not a solution to the problem. The ultimate

focus is on the identity of the offenses, not on the identity of their source."

In the case at bar each offense for which Wilson Fields was convicted is separate and distinct. When Wilson Fields kicked Chief Miller in the chin, he committed assault and battery. His yelling, cursing, and threatening remarks were sufficient by themselves to support a conviction for disorderly conduct. Therefore, we hold that it was proper for the court to sentence Wilson Fields both for assault and battery and disorderly conduct.

We also hold that Fields was properly convicted and sentenced for resisting and interfering with a police officer. We recognize that we have held that Fields' initial arrest for interfering with a police officer was illegal. But we also held that Fields had no right to resist a peaceful arrest, even if that arrest was unlawful. When he forcefully resisted Officer Fields' attempt to take him into custody, Wilson Fields then committed the crime of resisting a police officer in that the law has given a police officer the right and privilege to take an arrestee into custody, even where that arrest is unlawful, with the proviso that that officer and the governmental unit which he represents may be liable in a civil action for false arrest. Fields' actions subsequent to the unlawful arrest constituted crimes for which he must pay the penalty. But those subsequent actions in no way impair his right to seek redress in a civil action.

Judgment affirmed.

Lybrook, P.J. and Robertson. J. concur.

NOTE—Reported at 382 N.E.2d 972.

TOWN OF MERRILLVILLE; BOARD OF TRUSTEES OF THE TOWN OF MERRILLVILLE; AND THE MERRILLVILLE PLAN COMMISSION
v. WILLIAM J. COLLINS AND MARGERY M. COLLINS

[No. 3-1075A230. Filed November 22, 1978. Rehearing denied December 29, 1978. Transfer denied May 10, 1979.]

*Fred M. Cuppy, Gerald K. Hrebec, J. Philip Klingeverger*, of Gary, for appellants.

*William J. Regan*, of Merrillville, for appellees.

HOFFMAN, J.— William and Margery Collins filed suit in the court below seeking, *inter alia*, a judgment declaring Proposed Ordinance No. 74-32 of the Town of Merrillville to be in full force and effect by operation of law. The proposed ordinance, rejected by the Board of Trustees of the Town of Merrillville by a four to three vote, purported to change the zoning classification of the Collins property in order to permit the operation of a bridal shop on the premises. The court below found for the Collinses, and the Town, the Board of Trustees of the Town, and the Plan Commission (hereinafter collectively referred to as "the Town") appeal.

The agreed statement of facts submitted to the court below established the following:

On April 15, 1974, the Collinses petitioned the Merrillville Plan Commission for a change of zoning classification of their property from R-3 to B-1. Notice was duly published and a public hearing was held on May

20, 1974. At that time the Plan Commission approved the petition and referred it to the Board of Trustees of the Town of Merrillville as Proposed Ordinance No. 74-32. On July 9, 1974, at a regular public meeting, the Board remanded the petition to the Commission without rejecting or approving it.

At the Commission meeting of July 15, 1974, the petition was referred back to the Board because no instructions or statement of reasons for rejection or amendment had accompanied it on remand. On July 23, 1974, the Board voted on the proposed ordinance, with three members voting in favor of passage, three voting against it and one abstaining. At the Board meeting of September 11, 1974, however, the proposed ordinance was rejected by a vote of four to three.

On October 15, 1974, the Collinses filed their complaint seeking declaratory relief. They claimed that the action of the Board in attempting to reject the ordinance was ineffective, as a three-fourths vote was required to override the recommendation of the Commission with respect to such an ordinance. Since that action was ineffective, they argued, the proposed ordinance became effective 120 days after its presentation to the Board. The court below agreed, finding that IC 1971, 18-7-5-39 — 18-7-5-46 (Burns Code Ed.), which sections govern the procedure for adopting and amending the master zoning plan, did require a three-fourths vote to effectively reject such a proposed ordinance. Thus, the sole issue in this appeal is whether the court properly construed the applicable statutes.

IC 1971, 18-7-5-67 (Burns Code Ed.) provides that all amendments, supplements or changes of the regulations of the zoning ordinance shall be considered as amendments to the master zoning plan. That section also provides that a hearing shall be held on such proposed ordinances and that the Plan Commission shall make a report to the Town Board of Trustees[1] of its recommendations con-

---

Thus, the names of entities used in this opinion reflect the fact that Merrillville is an incorporated town and that its chief legislative body is the Board of Trustees.