**James LESHORE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 02A03–0007–CR–234.

Court of Appeals of Indiana.

Nov. 22, 2000.

Transfer Granted Jan. 29, 2001.

P. Stephen Miller, Fort Wayne, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant James Leshore (Leshore) appeals his conviction of escape, a Class C felony. Ind.Code § 35–44–3–5.

We reverse.

### ISSUE

Leshore raises the sole issue of whether the evidence is sufficient to support his conviction of escape.

### FACTS AND PROCEDURAL HISTORY

On March 17, 1999, Officer Michael Bennington of the Allen County Sheriff's Department went to Leshore's last known address in Fort Wayne, Indiana, to execute a Writ of Attachment for Person in Contempt for non-support of a dependent. The police entered Leshore's home and placed Leshore in handcuffs and detained him based upon the provisions of the Writ. Leshore then slipped his hands from the handcuffs and fled the residence. The police chased him, ordering Leshore to stop several times. Leshore was eventually apprehended ten minutes later. Leshore was charged and convicted of escape following a bench trial. Leshore was sentenced to the Department of Correction for a period of four (4) years. The sentence was ordered suspended, and Leshore was placed on probation for a period of two (2) years. This appeal ensued.

### DISCUSSION AND DECISION

Leshore argues that the evidence is insufficient to convict him of escape. Leshore contends that because he was not lawfully detained he could not be guilty of escape. Specifically, Leshore claims that because the Writ of Attachment for Person in Contempt issued by the trial court and served upon him did not meet the proce-

dural requirements of the statute since it did not include a bail or escrow amount, the Writ was invalid. Consequently, Leshore contends that because the Writ of Body Attachment was invalid, the sheriff serving the writ did not lawfully detain him, and without a lawful detention, he cannot be guilty of escape. We agree.

 In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or judge the credibility of the witnesses. *Mabbitt v. State,* 703 N.E.2d 698, 700 (Ind.Ct.App.1998). Rather, we will examine only the evidence most favorable to the verdict along with all reasonable inferences to be drawn therefrom, and if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.* Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense. *Id.*

 The offense of escape occurs when a person "intentionally flees from lawful detention." Ind.Code § 35–44–3–5. Further, in pertinent part, "lawful detention" is defined by Ind.Code § 35–41–1–18 as follows:

"Lawful detention" means:

(1) arrest;

\* \* \* \* \*

(10) any other detention for law enforcement purposes.

 Therefore, in order to convict Leshore of escape, the State was required to prove beyond a reasonable doubt that he intentionally fled from officers following his arrest or detention for law enforcement purposes. The evidence is undisputed that once the officers placed Leshore in handcuffs, he pulled his hands free from the handcuffs and fled from his residence. Leshore continued to flee after the officers repeatedly ordered him to stop. The officers eventually apprehended Leshore approximately eight to ten minutes later.

Nevertheless, Leshore argues that he was not in lawful detention at the time he fled from the officers because the Writ of Body Attachment was invalid. The statute addressing a Writ of Attachment of the Body of the Person provides in relevant part as follows:

(a) For the purpose of procuring personal jurisdiction over a person who has allegedly violated a court order or who is otherwise in contempt of court, the court may issue a writ of attachment of the body of the person.

(b) A writ of attachment issued under subsection (a) *shall* :

(1) be directed to a sheriff or assisting sheriff; and

(2) fix an amount of:

(A) *bail*, if the order that the person has allegedly violated does not concern a child support obligation; or

(B) *escrow,* if the order that the person has allegedly violated concerns a child support obligation.

Ind.Code § 34–47–4–2 (emphasis supplied).

In the present case, the Writ of Attachment for Person in Contempt stated as follows:[1]

IN THE ALLEN *SUPERIOR* COURT
38TH JUDICIAL CIRCUIT
ALLEN COUNTY, INDIANA

James Leshore
DEFENDANT/RESPONDENT

**WRIT OF ATTACHMENT
FOR PERSON IN CONTEMPT**

---

1. We have supplied italics to denote handwritten portions that have been filled in on the Writ.

**NAME/ADDRESS OF PERSON WHO IS IN CONTEMPT:**

*James Leshore*
*2922 Plaza Dr*
*Ft Wayne, IN 46806*

**TO THE SHERIFF OF ALLEN COUNTY OF ASSISTING SHERIFF:**

You are hereby ordered to attach and keep the above named person until you bring that person before the Judge to answer a charge of contempt in not obeying the order of this Court.

The amount of $ *NO BOND* (cash only) is fixed for:

☐ **Bail** (COURT ORDER DOES <u>NOT</u> CONCERN A CHILD SUPPORT OBLIGATION)
The Sheriff may release the person on bail as in criminal matters.

☐ **Escrow** (COURT ORDER CONCERNS A CHILD SUPPORT OBLIGATION)
The Sheriff may release the person after escrow has been deposited with the Clerk of the Court.

| | |
|---|---|
| Date: 10–27–98 | /s/ Stephen M Sims |
| | Judge |

(R. 68) (emphasis in original).

Clearly, the Judge of the Allen Superior Court did not mark either the bail or escrow box on the Writ form. Therefore, the Writ of Body Attachment for Leshore did not fix an amount of bail or escrow as required by the statute.

 Our foremost objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 989 (Ind.1998). Where a statute has not previously been construed, the interpretation is controlled by the express language of the statute and general rules of statutory construction. *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs,* 693 N.E.2d 972, 974 (Ind.Ct.App.1998). We examine the statute as a whole and give common and ordinary meaning to the words employed. *Robinson v. Wroblewski,* 704 N.E.2d 467, 474 (Ind.1998). The legislative intent as ascertained from the whole prevails over the strict literal meaning of any word or term used in the statute. *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 970 (Ind.1998), *reh'g denied.* We presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals; thus, we construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Coops., Inc.,* 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998); *Indiana State Teachers Ass'n,* 693 N.E.2d at 974.

 As the cases above instruct, we must interpret a statute meaning from the express language of the statute and give common and ordinary meaning to the words employed. We hold that the Writ of Attachment of the Body of the Person statute is not ambiguous and is clear on its face. Pursuant to the statute, in order for the State to acquire personal jurisdiction over a person, the writ of attachment *shall* fix an amount of bail or escrow. The word "shall" used in the statute is presumed to be mandatory unless it is clear from the context that the General Assembly intended otherwise. *Murray v. Hamilton County Sheriff's Dep't,* 690 N.E.2d 335, 340 (Ind.Ct.App.1997). Therefore, we hold that in order for the Writ to be valid, the Allen Superior Court Judge was required

to fix an amount of bail or escrow in the Writ. By failing to fix an amount of bail or escrow in the Writ, and instead noting that "No Bond" was fixed for the Writ, the Writ did not meet the requirements of the statute, and was invalid on its face.

■ Further, since the Writ was invalid, the Sheriff did not have personal jurisdiction of Leshore. The evidence is undisputed that the Sheriff did not go to Leshore's home in order to arrest him, thus, when Leshore was placed in handcuffs, this amounted to an unlawful detention. In addition, because the Writ was invalid on its face, Leshore's detention was fundamentally unlawful. Therefore, when the sheriff placed him in handcuffs, Leshore was neither under arrest nor under any other detention for law enforcement purposes as "lawful detention" is defined by Ind.Code § 35–41–1–18. Although Leshore did remove the handcuffs and intentionally fled from officers after they ordered him to stop, Leshore was never lawfully detained because the Writ was invalid on its face. We hold that reasonable persons would be unable to find that Leshore's actions met each material element of the escape charge. Therefore, we must reverse Leshore's conviction because there never was a lawful detention for Leshore to intentionally flee from.

Reversed.

BAILEY, J., concurs.

BARNES, J., dissents with opinion.

BARNES, Judge, dissenting

I respectfully dissent. As we have recently stated in our decision in *Adkisson v. State,* 728 N.E.2d 175, 178 (Ind.Ct.App. 2000), case law has long held that, absent excessive force, one cannot resist even an illegal arrest. *See, e.g., Fields v. State,* 178 Ind.App. 350, 382 N.E.2d 972, 976 (1978). I acknowledge that Detective Bennington was technically not at Leshore's home in order to "arrest" him. However, once he "entered Leshore's home and

placed Leshore in handcuffs and detained him based upon the provisions of the Writ," (Op. p. 1076), Leshore was "lawfully detained." As the majority correctly notes, Indiana Code Section 35–41–1–18 defines "lawful detention" as "(1) arrest; ... [or] (10) any other detention for law enforcement purposes."

Though Leshore was hiding in a cabinet in the basement, others present at his home permitted Bennington to enter. Bennington told them he had "a warrant, a body attachment for Mr. Leshore—." Record p. 53. At Leshore's bench trial, Bennington testified that he had "many times" taken individuals into custody for nonsupport of a dependent. Record pp. 45, 71. It is clear from the transcript in this cause that in Bennington's mind a warrant and a body attachment were interchangeable; he testified that as an officer of the Allen County Warrants Division, "my duty is to go out and locate individuals that are hiding or disobeying the Court, not honoring warrants or personal appearances that they should make before the Court and bring them into custody." Record p. 45. It is also clear that Bennington was engaged in a "law enforcement purpose."

Although the writ in this case was undisputedly defective, clearly the arresting officer was not aware of its defect. At Leshore's bench trial, Bennington referred to the body attachment, which had been introduced into evidence, and testified, "that warrant is a no bond also, which means he is not able to be released without any—no matter how much money was spent." Record p. 71. The majority reasons that because of the defect, the Sheriff did not have personal jurisdiction of Leshore. I believe Leshore was lawfully detained and my analysis ends there. In the instant case, Leshore was handcuffed and advised that the purpose of his detention was to serve the body attachment. Record p. 59. He believed himself to be under arrest—as he subsequently told Allen County Detec-

**1080**

tive Sergeant King—and fled because he did not want to go to jail. Record p. 81. He then "was able to rip his hand out of the cuffs … and … at full speed run out of the door." Record p. 60. Bennington and another officer chased him, ordering him repeatedly to stop. *Id.* The officers lost sight of Leshore and he was not found until some twenty minutes later, when the canine unit discovered him in a neighbor's dog house. Record pp. 6, 75.

Public policy and the law must direct citizens to comply with the reasonable commands and directions of law enforcement authorities. As this court stated in *Fields*:

> To us the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court.

382 N.E.2d at 976. "Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders." *Id.* The same rationale applies and is in fact all the more resonant in the case of an escape such as Leshore's, which involved a protracted chase and could have easily turned violent or dangerous, involving innocent people in the area. The place to contest the validity of a writ of attachment is the courtroom, in the context of the legal system, not while evading police in the neighborhoods of Allen County. I would affirm Leshore's conviction for escape.