John V. DORA, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 07A01–0112–CR–482.

Court of Appeals of Indiana.

Feb. 12, 2003.

David C. Grupenhoff, Thomas M. Barr & Associates, Nashville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

A jury convicted John V. Dora of resisting law enforcement [1] as a Class A misdemeanor, operating a vehicle while intoxicated [2] as a Class A misdemeanor, and found that he failed to reduce speed for an authorized emergency vehicle, a civil infraction. [3] Dora appeals and raises the following restated issues:

I. Whether the trial court erred during voir dire when it permitted the State to exercise a peremptory challenge to a prospective juror that the State intended to strike but, due to error, inadvertently passed over during the initial striking process;

II. Whether the court's jury instruction on resisting law enforcement, which included a common law principle precluding resistance to an unlawful arrest, was erroneous as contrary to law; and

III. Whether the trial court unconstitutionally limited Dora's right to present his defense when it limited the scope of his testimony concerning his knowledge of local law enforcement misconduct allegations.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the State follow. On November 28, 1999, at approximately 1:00 a.m., Nashville Police Officer Diana Clephane was in her marked police vehicle with emergency lights activated conducting a traffic stop on State Road 46 in Brown County. Clephane's parked patrol car straddled the shoulder and the eastbound lane of the highway. As she sat in her vehicle, a sport utility vehicle (SUV) passed Clephane at "a rather high rate of speed" without attempting to move over to accommodate her stopped car. *Transcript* at 301. Clephane radioed to Sheriff's Deputy Paul Suding, ahead of her on the road, to look for the SUV. Suding spotted the SUV and pulled behind it, pacing it at approximately seventy miles per hour in a fifty-five mile per hour zone. Suding activated his emergency lights to initiate a traffic stop. After turning off the highway, the SUV stopped abruptly, and Dora immediately exited the vehicle, slamming his door. Dora walked toward Suding, who also had exited his vehicle. Suding asked Dora to return to his vehicle. Dora refused and stood with his arms folded. Dora asked for the reason for the stop, and Suding continued to order Dora to return to his vehicle. In total, Suding asked Dora eleven times to get back in his vehicle. In an attempt to gain control of the situation, Suding told Dora that if he did not return to his car he would be placed under arrest. Dora responded, "I'm ready for that." *Transcript* at 494.

Suding told Dora to turn and place his hands behind his back. Dora latched his hands on his shirt in order to prevent Suding from handcuffing him. Suding made repeated attempts to cuff Dora and eventually maneuvered him to the ground, where Dora was face down with his arms tucked under him. Two more officers arrived to assist Suding with Dora who was kicking and squirming. The officers successfully handcuffed Dora after applying pepper spray to his eyes. During the incident, Dora was loud and belligerent. The State charged him with resisting law en-

---

1.   *See* IC 35–44–3–3(a)(1).

2.   *See* IC 9–30–5–2.

3.   *See* IC 9–21–8–35(b)(2).

forcement, operating a vehicle while intoxicated, and failure to reduce speed for an authorized emergency vehicle.

On the last day of trial, the State filed a motion in limine to limit Dora's testimony concerning Dora's knowledge of allegations of law enforcement misconduct in the community, which Dora claims resulted in his distrust of local law enforcement. The court allowed Dora to testify about the matters, but limited the scope of his testimony to preclude him from testifying in detail about the alleged incidents.

The jury found Dora guilty as charged. He now appeals.

### I. Peremptory Strikes

■ Dora asserts that he was prejudiced during jury selection and that he is entitled to a new trial. Specifically, he challenges the trial court's ruling that permitted the State to exercise a peremptory strike after it had passed on that particular juror.

■ The general rule is that the right to challenge peremptorily is subject to reasonable regulation by the court. *McBrady v. State*, 459 N.E.2d 719, 722 (Ind.1984) (citing *Marsh v. State*, 272 Ind. 178, 180, 396 N.E.2d 883, 885 (1979)); *Wise v. State*, 763 N.E.2d 472, 476 (Ind.Ct.App.2002), *trans. denied*. Decisions concerning such regulation are reviewed for an abuse of discretion. *See Wise*, 763 N.E.2d at 478–79.

■ Here, prior to the start of voir dire, the trial judge advised counsel that each side would be entitled to five peremptory strikes.[4] She further explained the jury selection process as follows:

We voir dire the first twelve in the box but then your first round of strikes is only on the first six. If you pass on one you've past [sic] them for good. You don't go back and strike them. Let's say three are stricken from the first row on the first round, we then bring in the next three from the back row. Your second round of strikes is on those next three. No additional questions. We just bring them in and you strike until we've gone through those twelve. And then we bring in some more.

*Transcript* at 104.

After counsel for each side questioned the prospective jurors, the trial judge struck for cause Juror No. 1[5] and replaced her open seat with another juror from the back row. From that panel of six, the parties addressed their peremptory strikes. Each counsel wrote his or her strike(s) on a slip of paper, then simultaneously submitted it to the court; thus, neither party knew what juror the other was striking. The State struck Juror No. 4, and defense counsel struck Juror No. 6. The court excused those two individuals, and, as it began to fill those two vacancies, the State asked to approach the bench. The prosecutor explained that because she had written down the jurors' names incorrectly, she inadvertently struck Juror No. 4, when her intention was to strike Juror No. 5. The prosecutor did not suggest or request that Juror No. 4 be recalled, but rather that she be permitted to exercise a second peremptory strike as to Juror No. 5. The court allowed the State to so exercise the strike, over defense counsel's objection. Dora claims that decision preju-

---

4. "A peremptory challenge is one exercised without reason stated, without inquiry, and without being subject to the court's control. No party is required to explain its reasons for the exercise of such challenge." *Shields v. State*, 523 N.E.2d 411, 413 (Ind.1988).

5. Although the prospective juror's names are included in the record before us, we will identify the individuals by numerical designation for ease in discussion.

diced him and that the trial court thereby abused its discretion. We disagree.

We recognize that in its outline of jury selection procedures the court stated that once a party had made its peremptory strike(s) from a panel, he or she could not "go back." *Transcript* at 104. However, these local procedures were instructions that the court presumably prepared for the purpose of conducting an orderly jury selection process, i.e., to prevent the routine practice of jumping back to prior panels in the striking process. A court's procedures are not necessarily inflexible and without exception. Rather, the whole process is subject to reasonable regulation by the court.

Dora argues that the court should not have allowed the belated strike because, at that point, the State had knowledge that the defense had not struck No. 5, or stated another way, the State knew that No. 5 was an acceptable or perhaps desirable juror to the defense. While Dora's argument is not without merit, it does not conclusively establish prejudice or otherwise rise to the level of an abuse of discretion. Here, the facts and inferences most favorable to the State show that the request stemmed from an honest mistake, not from a mere change in choice. Further, the prosecutor raised the error before the second round of striking began. Notably, the State had not used all of its peremptory challenges, and the process of impaneling the jury had not been completed.

Under these circumstances, we find no abuse of discretion in permitting the State to exercise its second peremptory strike. *But see McBrady*, 459 N.E.2d at 722 (trial court did not err by precluding defendant from belatedly exercising peremptory strike after defendant failed to exercise challenge at proper time due to misunderstanding between him and his counsel);

*Wise*, 763 N.E.2d at 478–79 (Sullivan, J., dissenting) (trial court did not abuse its discretion when it denied defendant's request to exercise peremptory strike to juror who had already been accepted by the parties).

## II. Resisting Law Enforcement Instruction

■■■ Dora challenges the trial court's resisting law enforcement jury instruction, alleging that it was contrary to law. A trial court enjoys broad discretion in the decision to instruct the jury, and its decisions will be reviewed only for an abuse of discretion. *Patton v. State*, 760 N.E.2d 672, 674 (Ind.Ct.App.2002).

The court instructed the jury on the elements of the resisting law enforcement statute, IC 35–44–3–3, as follows:

> A person who knowingly, forcibly resists, obstructs or interferes with a law enforcement officer or a person assisting the officer *while the officer is lawfully engaged* in the execution of his duties as an officer commits resisting law enforcement, a Class A misdemeanor.

*Appellant's Appendix* at 55 (emphasis added). The court continued,

> The general rule in Indiana is that a private citizen may not use force in resisting a peaceful arrest by an individual who he knows or has reason to know is a police officer performing his duties *regardless of whether the arrest in question is lawful or unlawful.*

*Appellant's Appendix* at 58 (emphasis added) (hereinafter the "general rule"). Dora's quarrel on appeal is that the general rule is outdated, contrary to IC 35–44–3–3, and no longer an accurate statement of the law. Accordingly, he argues, the trial court's instruction was erroneous. We disagree.

At one time, as explained by our supreme court in *Fields v. State*, 178 Ind.

App. 350, 355, 382 N.E.2d 972, 975 (1978), Indiana common law permitted a person to resist an unlawful arrest with reasonable force. However, the *Fields* court disavowed this principle of law, explaining that the need for self-help as a remedy to resist an intrusion upon one's freedom was "outmoded in our modern society," where a civil remedy was available to redress an allegedly improper arrest. 178 Ind.App. at 355–56, 382 N.E.2d at 975–76. The court affirmatively adopted the general rule that an individual may not forcefully resist an officer's attempt to arrest him even if that arrest is unlawful. 178 Ind. App. at 357, 382 N.E.2d at 976.

Dora reminds us that *Fields* was decided under IC 35–21–4–1, the predecessor to the current resisting law enforcement statute. IC 35–21–4–1 did not include the "lawfully engaged" language, but read:

Whoever shall forcibly assault, resist, oppose, obstruct, prevent, impede or interfere with any peace or police office of this state ... while such officer is arresting or attempting to arrest any person, or while such officer is engaged in the execution of any of the duties of such peace or police officer, shall be deemed guilty of a misdemeanor[.]

In 1976, IC 35–44–3–3 was enacted to replace IC 35–21–4–1. Dora maintains that the legislature's insertion of "lawfully engaged" in IC 35–44–3–3 indicated that lawful arrest was a prerequisite to a conviction for resisting law enforcement. He continues that, because *Fields* was decided under the former resisting law enforcement statute, it does not guide our decision and that the general rule no longer is an accurate statement of the current law.

We note that cases decided subsequent to the "lawfully engaged" amendment to the statute continue to cite and rely upon the general rule. *See Johnson v. State,* 747 N.E.2d 623, 632–33 (Ind.Ct. App.2001); *Shoultz v. State,* 735 N.E.2d 818, 823 (Ind.Ct.App.2000), *trans. denied* (2001); *Casselman v. State,* 472 N.E.2d 1310, 1315 (Ind.Ct.App.1985).[6]

IC 35–44–3–3 does not give the individual the prerogative to resist an arrest for which he believes there is insufficient probable cause or is otherwise unlawful. When there is a dispute as to the validity of an arrest, that question is " 'more properly determined by courts than by the participants in what may be a highly emotional situation.' " *Fields,* 178 Ind.App. at 356, 382 N.E.2d at 976 (quoting *Miller v. State,* 462 P.2d 421, 426–27 (Alaska 1969)). To adopt Dora's position, allowing a citizen to resist what he believes at that time to be an unlawful arrest, would effectively encourage rather than inhibit violence during arrests. This we cannot condone. The trial court's jury instruction was not erroneous.

### III. Limitation on Dora's Trial Testimony

Dora next challenges his driving while intoxicated conviction. He contends that there was "scant objective evidence of intoxication," and infers that the jury thus based its decision on his "unusual and extreme" reaction to the encounter with the police, which by his own admission was "vociferous and demonstrative." *Appellant's Brief* at 10, 13. Dora's defense was that his behavior was caused not by intoxication, but rather by his fear and distrust of local law enforcement based on his

---

6. We note that the general rule is not without exception. As discussed in *Shoultz:* "[T]he rule that a citizen may not resist a peaceful though illegal arrest was not 'intended as a blanket prohibition so as to criminalize any conduct evincing resistance where the *means used* to affect the arrest are unlawful.' " 735 N.E.2d at 823 (quoting *Casselman,* 472 N.E.2d at 1316).

knowledge of incidents of alleged police misconduct involving local law enforcement agencies. He argues on appeal that the trial court unconstitutionally limited his ability to present this defense when it limited the scope of his testimony concerning his knowledge of the alleged misconduct. We disagree.

While a defendant has a constitutional right to present evidence on his own behalf, this right is not limitless but is subject to established rules of procedure and evidence. *See Sanchez v. State,* 749 N.E.2d 509, 521 (Ind.2001). Where a court has limited the right of a defendant to present evidence in his defense, "reversal should be granted when the trial court's exercise of discretion was 'unreasonable in light of all attendant circumstances' and prejudicial to the defendant." *Poore v. State,* 501 N.E.2d 1058, 1062 (Ind. 1986) (quoting *Emmons v. State,* 492 N.E.2d 303, 305 (Ind.1986)).

Here, on the third day of trial, the State filed a motion in limine to limit the scope of Dora's testimony concerning his knowledge of alleged local police misconduct. The trial court balanced the probative value of the sought testimony versus its potentially prejudicial effect and determined that Dora's knowledge of the allegations was relevant, but that details of the allegations were too prejudicial to be admitted.[7] *Transcript* at 734–43.

Here, Dora testified before the jury about his knowledge of publicity concerning the allegations. He further testified to the names of alleged victims with whom he had spoken. When asked about the nature of the allegations, Dora responded, "Abuse of power. They pull people over for no reason. They harass them." *Transcript* at 783. He identified by name an officer that he had seen "tail people in town," and

he spoke of officers "pulling guns on high school students." *Transcript* at 783–84. He explained that his knowledge included arrests without probable cause and officers threatening "to beat someone who is stopped for a traffic ticket." *Id.* at 805.

Although Dora claims that he was not able to fully explain to the jury his state of mind during the arrest, his testimony is to the contrary:

Q: Okay. How did these experiences that you had ... or rather these reports of other people's experiences affect your perception?

A: I live in fear of the local police departments.

. . . .

Q: Okay. What emotions were you experiencing at that point in time?

A: Fear, anger.

*Transcript* at 806. Dora nevertheless maintains that his ability to rebut the charge of intoxication was unfairly limited because "greater detail would have made his explanation more plausible and more understandable to the jury." *Appellant's Brief* at 12. We find that Dora's testimony was sufficiently detailed to enlighten the jury as to Dora's view of law enforcement and allow it to consider what effect, if any, this had upon Dora's behavior during the stop in question. He was not deprived of his ability to present his defense, and the trial court did not abuse its discretion in limiting the scope of Dora's testimony.

Affirmed.

SULLIVAN, J., and SHARPNACK, J., concur.

---

7. Thereafter, Dora made an offer to prove, elaborating on specific details of his knowledge of the various alleged incidents of misconduct. *Transcript* at 778–800.