**Shakidi N. JOHNSON, Plaintiff,**

v.

**James HERMAN, et al., Defendants.**

**No. 1:99–CV–521.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 31, 2001.

Christopher C. Myers, Shane C. Mulholland, Christopher Myers and Associates, Fort Wayne, IN, for Plaintiff.

John O. Feighner, Haller and Colvin, Fort Wayne, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

### I. Introduction

The Plaintiff, Shakidi Johnson (hereafter "Plaintiff" or "Johnson") filed this action under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended 42 U.S.C. § 1983 (" § 1983"), alleging that the Defendants deprived him of his Constitutional rights under the Fourth, Eighth, and Fourteenth Amendments and falsely imprisoned him when they detained him beyond the date of his sentence. This matter is now before the Court[1] on the Defendants' motion for

summary judgment filed on October 20, 2000. In support of their motion, the Defendants submitted a memorandum, Defendant Herman's Answers to Plaintiff's Interrogatories, Responses to Plaintiff's First Request for Production of Documents, Allen County Jail records, Allen Circuit Court docket and Court Order, Allen Superior Court docket and Court Orders, the affidavit of David Nine ("Nine") (hereafter "Nine aff. ¶ ___"), and Nine's notations made on a September 15, 1997 Court order.

The Plaintiff filed a response on November 17, 2000, and concedes that summary judgment should be granted under the Fourth or Eighth Amendments. (Pl. Resp. at 3). However, he still maintains his claims against the Defendants under the Fourteenth Amendment for violations of his substantive due process rights, and under state law. In support of his position, the Plaintiff submitted the pleadings, Plaintiff's Jail Packet and Inmate Request forms, the affidavit of Shakidi Johnson (hereafter "S. Johnson aff. ¶ ___"), and the affidavit of Eva Johnson.

The Defendants filed a reply to the motion for summary judgment on December 4, 2000, the Plaintiff then filed a sur-reply on December 6, 2000.

The Plaintiff also filed a motion to strike portions of Nine's affidavit. The Defendants responded to the Plaintiff's motion to strike on December 21, 2000, and this matter is now ripe for review.

For the reasons hereafter stated, the Plaintiff's motion to strike will be DENIED, and the Defendant's motion for summary judgement will be GRANTED as to the Fourth and Eighth Amendment claims, but DENIED as to the Fourteenth Amendment and state law claims.

### II. Motion To Strike

The Plaintiff seeks to strike paragraphs

---

1. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

three (3)[2] and five (5)[3] of Nine's affidavit, along with the handwritten notations on the September 15, 1997 order (exhibit A)[4] because they are inadmissible hearsay. However, the Defendants contend that the evidence is admissible as a hearsay exception under Fed.R.Evid. 803(6) and 803(7), or as non-hearsay to at least show that some of the confinement officers were not acting out of deliberate indifference.

■ Under the Federal Rules, " '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(a). Hearsay statements are inadmissible unless an exception applies. Fed.R.Evid. 802. Here, if Nine's affidavit is being offered for the truth of the matter asserted, for instance, that Nine was "advised," as he puts it, by some unknown judicial staff person to hold Johnson in custody and was later "advised" that Johnson had been released by judicial order, then it is clearly hearsay. *Id.* Thus, the question is whether any hearsay exception applies or whether the statements are being offered for any purpose other than the truth of what they purport to assert. Under Rule 803(6), records kept in the course of regularly conducted business activity are admissible. Fed.R.Evid. 803(6). However, this exception does not encompass statements contained within the business record that are made by third parties. *See Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir.2000)(stating that statements made by third parties in a police report are inadmissible under the business record exception). Thus, even though a report by Nine might be admissible, statements by some unnamed judicial staff person quoted by Nine within that report would not be admissible under Fed.R.Evid. 803(6). Since the Defendants have not presented any other exception which would admit the judicial staff person's statements, they are inadmissible to show that in fact Judge Sims ordered the Plaintiff to remain in jail or later ordered his release.

■ However, as the Defendants properly point out, evidence is admissible when it is being offered for purposes other than the truth of the matter asserted, such as to demonstrate a lack of deliberate indifference. *See Woods*, 234 F.3d 979 (statements in a police report admitted as nonhearsay to show that the officers had probable cause to arrest the plaintiff based on the information communicated to them). Here, Nine's notations are admissible as non-hearsay to show what he did in response to the Plaintiff's complaints, and to show what he was allegedly told, all presumably going to show that perhaps Nine did not act with deliberate indifference. Of course, relying on some unnamed staff person in the local court bureaucracy as authority to hold an inmate may not be reasonable (in the absence of a court order), a matter for the finder of fact to determine.

2. Paragraph 3 states:

 In response to the inmate request authored by Plaintiff Shakidi Johnson, December 20, 1997, I contacted the judicial staff of the Allen Superior Court Juvenile Division on December 29, 1997, at 8:30 a.m. to inquire about Mr. Johnson's status and whether he was to be released from Jail. At that time, there still was a valid Court Order, "Body Attachment," for Mr. Johnson which was pending in this case. Per my note on the document, *Exhibit A*, I was advised by the judicial staff to hold the Defendant in the Allen County Jail pending release from Judge Sims.

 (Nine aff. ¶ 3).

3. Paragraph five states:

 I am advised that after the post-New Year's Eve weekend that Judge Sims did issue a Jailer's Release, and the Plaintiff was then promptly released from the Allen County Jail.
 (Nine aff. ¶ 5).

4. The handwritten notations states:

 Called JP Court 0830 12–29–97 per direction: Hold Defendant pending release from Judge Sims. C421
 (Exhibit A).

Therefore, the Plaintiff's motion to strike is DENIED for the reasons stated.

### III. Procedural and Factual Background[5]

This case actually began when Johnson failed to appear in the Allen Superior Court for a paternity suit in cause number 02D07–9310–JP–393 (hereafter "the '393 case") on August 28, 1997, and as a result, a Body Attachment was issued.[6] The order stated as follows:

> To The Sheriff of Allen County, Indiana: You are hereby ordered to attach and keep [Shakidi Nathaniel Johnson] until you bring that person before the Judge to answer a contempt in not obeying the order of this Court.

On November 10, 1997, Johnson was arrested on the attachment (and also for resisting that arrest), and he was placed in the Allen County Jail. Then, on November 13, 1997, Johnson was brought before the Court for a hearing on the '393 case, but the matter was reset for December 9, 1997. (See '393 docket). The state court made no order remanding the Plaintiff to the Allen County Jail in the '393 case. On December 9, 1997, Johnson again appeared for a hearing, and the matter was again reset, this time to April 28, 1998. (See '393 docket). Again, no order was entered remanding Johnson to the jail, but apparently he remained incarcerated, presumably on his other two pending cases.

The first case involved a misdemeanor for resisting law enforcement during his Body Attachment arrest (Case No. 97–CM–5443)(hereafter "the '5443 case"). In response to this charge, Johnson pled guilty on November 12, 1997, and was sentenced to sixty (60) days, with thirty (30) days to serve, making his "out date" December 10, 1997. The second case appears to be another paternity suit, cause number 02C01–9608–JP–552 (hereafter "the '552 case"), and on December 9, 1997, Johnson was found in contempt of court in that case, and was committed to the Allen · County Jail for ten (10) days. (See '552 docket). Thus, under the sentences in these two cases, Johnson should have been released December 19, 1997.[7]

As Johnson began serving time on the various charges, he began inquiring about his final "out date" by sending Inmate Request Forms to various officers. Indeed, the Plaintiff sent his first form on December 11, 1997, nine days prior to his scheduled release date. In all, the Plaintiff sent at least fourteen (14) inquiries over the next twenty-seven (27) days, all with the same concern, that his incarceration should end, or in fact ended, on December 20, 1997.[8] In response to the ma-

---

5. The following recitation of facts is presented in a light most favorable to the non-moving party, the Plaintiff.

6. The body attachment was apparently ordered on August 28, 1997, and issued on September 11, 1997. (See '393 docket).

7. The Plaintiff alleges that his "out date" was December 19, 1997, and the Defendants allege that it was December 20, 1997. It appears that the Plaintiff was still serving his resisting law enforcement sentence until December 10, 1997. Under the Indiana Code, the court is to determine whether terms of imprisonment are to be served consecutively or concurrently. See Ind.Code § 35–50–1–2. Here, the court stated that Johnson's term of imprisonment was "effective upon date recorded in the Record of Judgments and Orders." (See Dec. 9, 1997 order). Presumably this means that the court intended the term of imprisonment to begin the day the order was signed and to run concurrently with the resisting law enforcement charge. Since the sentence began on December 9, 1997, the Plaintiff's "out date" was actually December 19, 1997.

8. Plaintiff's December 11, 1997 Complaint states:

> I would like to know my out date. I was suppose[d] to be released on 12–10–97. I went to [paternity] court on both my cases and was sentenced to 10 days for my will call case, for Kastella Davis. Jamaica Simmons, I went to court on 12–9–97.

A jail officer responded:

> On 11–12–97 you were sentenced to 60 days for resisting law enforcement. You go to court on Jan. 04, 1998 on a [Contempt of Court] charge.

Note 8—Continued

Plaintiff's December 13, 1997 Complaint states:

I would like someone to correct my out date[.] I [am] suppose[d] to get out on the 12–18–97. I went already to court for my contempt the computer say I got a court date on 1–4–98 that's on a Sunday. Please get this straight so I could go home for Christmas and what court have I been contempt for my cause number is 02C01–9608–JP–552 for my one case could tell me the other cause # .

A non-Defendant jail officer responded:

We are looking into it.

Plaintiff's December 14, 1997 Complaint states:

I would like to know my cause number for my contempt charge, that I went to family court on the 11–14–97, and my cause number for family court on 12–9–97 for Jamaica Simmons and my cause number for my 4–28–98 family court date and my 1–4–98 court date is on a Sunday. Could you tell me what charges that contempts (sic) on, [there is] a big mistake with my out date.

A non-Defendant jail officer responded:

| | |
|---|---|
| Contempt charge | D–9310–JP–393 |
| 1/4/98 | D–9310–JP–393 |
| 12/11/97 | 96–JP–552 |

The Plaintiff's December 17, 1997 Complaint states:

On 12–9–97 I had two cases for child support. I got 10 days for 1 case and suppose to go back 3–11–98 on the other case he let me go. I suppose to go back 4–28–98, my contempt charge is for the 4–28–98 case, plus I got a court date on 1–4–98 that's a Sunday. If you [do not] straighten that mistake out before my 12–20–98 outdate do I have to wait until [whoever] decides that their wrong.

The Defendants response states:

Yes.

The Plaintiff's December 20, 1997 Complaint states:

I would like to know why am I still being held. I went to court on both my contempts (sic) charges, why do you think I got two new court dates, 3–11–98, 4–28–98, and 1–4–98 is on a Sunday. Booking told my girlfriend both cause numbers match for the 4–28–98 and 1–4–98. [I have] called them all week. I wrote request forms nobody wont answer. Do I got to spend Christmas here for a officers mistake. Inmate information said I get out today tell me [what is] different about their computer than yours.

On January 3, 1998, Defendants responded:

You are being held for contempt on cause # 02D07–9310–JP–393—per Judge Sims' order you will be held until you are released—per Judge Sims disp. 12–29–97.

The Plaintiff's December 25, 1997 Complaint states:

I [am] suppose[d] to be release on 12–20–97. It was an error in the computer about a contempt charge [that is] already went to court for two officers look into the matter and found out it was a mistake, Officer Spiler & Mills. I wanted to know why am [I] still being held. It's almost a full week. I already missed Christmas and my love ones for an error I had nothing to do with. Please could you look into the matter because it [is] unjust.

The Defendants failed to respond.

The Plaintiff's December 29, 1997 Complaint states:

I wanted to know about my abstrac[t] of judgement and why I [have not] been [notified] about the Judge releasing me I been to court on both my contempt charges so why I have a 1–5–98 court date and when is my outdate.

The Defendants responded:

If you have been sent[enced] the [Department of Corrections] will figure your out date.

The Plaintiff's December 30, 1997 Complaint states:

[I am] waiting for someone to call my judge and verify that I was released from [paternity] court that's the only thing holding me. The computer says I go to court on 1–5–98 but [that is] a mistake. Could I know something soon so I could let my family [know] my situation or is 1–5–98 my out date.

Defendants failed to respond.

The Plaintiff sent a second Complaint on December 30, 1997 which states:

I have a court date on 1–5–98 on contempt. I already went to court for that charge and been released. My family keeps calling to find out the problem (sic) I still here. Please look into my file and see the mistake they made its been almost two weeks since my original outdate. My family called clerk of the courts and they [did not] have a(sic) date for me.

The Defendants failed to respond.

The Plaintiff's third Complaint sent on December 30, 1997 states:

Sir on my request form dated 12–29–97 there is obviously a mis-understanding. I [do not] have a criminal charge, and I [have] not been sentenced to the D.O.C. I went to [paternity] court on 11–14–97 and 12–9–97. On 12–9–97 the judge in support court order my support payments to be taken from my checks on the contempt charge D–9310–JP–393. The judge also ordered me released and gave me a 4–28–98 court date. My concern is why I

jority of these complaints, the Defendants submitted either no responses [9], unhelpful responses [10], or wrong responses.[11] However, on December 29, 1997, in response to a complaint submitted on December 20, 1997, Nine called the court to inquire whether Johnson should remain incarcerated, and was told by an unknown member of the judicial staff to keep him in jail until the court ordered otherwise. (*See* Exh. A). After receiving this information, Johnson continued to protest his incarceration, and he was finally released by court order on January 6, 1998 after his family complained to the court.

## IV. Standard of Review

"Summary judgment is proper only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1031 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(c)). While the moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, if any, which it believes demonstrate the absence of a [genuine issue of] material fact, there is nothing in Rule 56 that requires a moving party to negate an essential element of an opponent's claim for which the opponent will bear the ultimate burden at trial." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53,

was not released as the court ordered. Thank you again for your time and help.

The Defendants failed to respond.

The Plaintiff's January 1, 1998 Complaint states:

> To the new booking officer I [have] a contempt of court case that I already been sentenced on and released. The computer [has] me down for a 1–5–98 court date for that charge, my outdate was 12–20–97 but that court date held me incarcerated when the 1–5–98 comes and I [do not] go to court will I be getting released because I will not have a out date or another court date.

The Defendants failed to respond.

The Plaintiff's January 6, 1998 Complaint states:

> I was supposed to go to court on the 1–5–98 on a contempt charge that I already went for but there was a mistake in the computer now. Since the courts [do not] have my charge in the docket what is the reason for me being held in the jail. I'm a free man still incarcerated.

The Defendants failed to respond.

The Plaintiff also sent at least two other complaints that were not written on the formal complaint form. The first complaint states:

> Shift Commander
>
> I was supposed to be [released] on 12–20–97 but [there] was an error in my paper work. Third shift officer Mills found the mistake and told me [there is] no reason for me to be still incarserated (sic), he said I have to wait till Monday. I served my time for the courts,

why do I have to serve more time on an error on the jails behalf.

> Shakidi Johnson

The Defendants responded:

> Court date: 4/28/97 on contempt of court charge

The Plaintiff's second complaint states:

> I will like to know my cause number to my contempt of court on 1–4–98 because that date is on a Sunday I[am] suppose[d] to get out on 12–18–97 [there is] a big mistake in the [computer] system.
>
> Shakidi Johnson

The Defendants responded:

> 12–20–97; D–9310–JP–393

**9.** *See* inmate complaint forms sent on December 25, 1997, December 30, 1997 (2 complaints), January 1, 1998, and January 6, 1998 submitted by the Plaintiff. These complaint forms were received by officers, but there is no evidence in the record that they were ever responded to.

**10.** *See* inmate complaint forms sent on December 13, 1997, December 17, 1997, and December 29, 1997.

**11.** *See* inmate complaint form sent on December 11, 1997 and December 14, 1997. In these responses, Ed Berghoff, a non-party, told the Plaintiff that he would go to Court on January 4, 1998 for his contempt charge in '393. However, this is obviously wrong (as the Plaintiff pointed out on several occasions) because January 4, 1998 was a Sunday, and because the '393 docket sheet makes no reference to such a court date.

91 L.Ed.2d 265 (1986)). Rather, the standard for granting summary judgment, which mirrors the "directed verdict" standard under Rule 50(a), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), requires the district court to grant summary judgment if the record before us "could not lead a rational trier of fact to find for the non-moving party." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The burden is therefore on the non-movant to set forth "specific facts showing that there is a genuine issue for trial." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(e)). "In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 394 (7th Cir. 1998) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513).

The nonmoving party may not rest on the allegations of the pleadings in opposing a motion for summary judgment. *Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir.1998); Fed.R.Civ.P. 56(e). "Furthermore, a 'party needs more than a scintilla of evidence ... to defeat summary judgment.'" *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) (quoting *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir.1997)); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Moreover, "neither 'the mere existence of some alleged factual dispute between the parties,' *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2505, nor the existence of 'some metaphysical doubt as to the material facts,' *Matsushita Elec.*

*Indus.*, 475 U.S. at 586, 106 S.Ct. at 1356, is sufficient to defeat a motion for summary judgment." *Tesch v. County of Green Lake*, 157 F.3d 465, 471 (7th Cir. 1998). Thus, a summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Essex*, 111 F.3d at 1308 (quoting *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512).

## V. Discussion

■ Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). To state a claim under § 1983, Johnson must (1) allege facts that show that the Defendants acted under color of state law, and (2) that the defendants deprived him of some right under the United States Constitution. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Inasmuch as the Defendants were clearly acting under color of state law, the Court will move onto the second prong of the analysis.

■ Apparently critical to the overall issue is the Plaintiff's premise that he was unlawfully detained from December 19, 1997 to January 6, 1998. In response, the Defendants argue that because the Body Attachment had never been "recalled," they still had a valid court order (*i.e.*, the original Body Attachment) that allowed them to incarcerate Johnson through January 6, 1998. However, when a Body Attachment has been served, it is no longer subject to being recalled, indeed, its function has been fulfilled, and the disposition of the person whose body has been attached is up to the judge before whom he

appears.[12] *See* Ind.Code § 34–4–9–2.1.[13] In fact, the terms of the Body Attachment here merely authorized the Sheriff to "attach and keep [Johnson] *until* you bring [him] before the Judge to answer a contempt in not obeying the order of this Court." (*See* Def. Exh. B, at 6 (Body Attachment)(emphasis added)). So after Johnson was brought before Judge Sims, if no order of incarceration was entered (as in the '552 case on December 9, 1997), he should have been released unless he had other charges pending. *See, e.g., Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir.1998)(stating that a writ of attachment only authorizes the sheriff to arrest the plaintiff with the limited authority to take him to court and that "[w]ithout any finding of culpability the municipal authorities possessed no power to detain [the plaintiff]."). However, because Johnson did have other charges pending, he was held to answer them, with the record in the '393 case silent as to any disposition on the contempt charge.[14]

Nevertheless, the Defendants argue in their reply brief that under Indiana law they were authorized to release Johnson only if he had posted bail or deposited the child support money in escrow. (*See* Def. Rep. at 8); Ind.Code § 34–4–9–2.1(d)(a sheriff may release a person on bail or after he has deposited money in escrow). This argument overlooks the fact that this statutory provision obviously applies to instances where the person attached under the writ wishes to pay his child support obligation (i.e., the "bail") so as to avoid sitting in jail awaiting for a court appearance. After a court appearance, a person sitting in jail would either be serving a sentence for contempt, or subject to release by the payment of a court ordered amount of child support arrearage.

■ Furthermore, while Indiana Code § 34–4–9–2.1(b)(2) required the writ of attachment to state the amount of Johnson's bail or escrow, no amount appears on the writ, and thus, the writ was apparently invalid under Indiana law. *See Leshore v. Indiana*, 739 N.E.2d 1075, 1078–79 (2000)(holding that a writ that failed to fix an amount of bail or escrow was invalid on its face, meaning that the sheriff had no jurisdiction to detain the plaintiff based on that writ).[15]

Therefore, the upshot of all this is that after the Body Attachment was served and Johnson appeared in court, the sheriff's authority to hold him on the '393 case ended, and when the sentences expired on his other charges, he should have been released on December 19, 1997. Nevertheless, Johnson remained incarcerated until January 6, 1998.

Having found that Johnson was unlawfully detained, we now must determine whether this gives rise to a substantive Due Process claim under the Fourteenth Amendment. For this purpose we turn to the case of *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir.1998) where it is recounted that to prevail, Johnson must show that the (1) Due Process Clause has been implicated; (2) the conduct here offended the standards of substantive due process; and (3) the totality of the circumstances de-

---

**12.** Indeed, the Local Rules of the Allen County Superior Court—Civil Division only provides for the recall of Body Attachments "during the pendency of a Body Attachment ...." *See* Allen Superior Court–Civil Division Local Rule 27(D)(2). Moreover, the Rule goes on to provide that when a Body Attachment is recalled, the "underlying proceedings supplemental shall be dismissed." *Id.* Therefore, a served Body Attachment cannot be recalled. For the same principle in a criminal context see, Ind.Code § 35–33–2–5.

**13.** Since Johnson's arrest this statute has been re-codified at Ind.Code § 34–47–4–2.

**14.** Perhaps Judge Sims did not feel it necessary to recite a disposition for Johnson because with Johnson's other charges he was going to be returned to the jail in any event.

**15.** Even if we assume that the Body Attachment was not facially invalid, as a practical matter, the jail records listed Johnson as having "no bond" in the '393 case. Thus, if Johnson had attempted to "bond out," he would not know how much to pay, and the Defendants probably would not have released him in any event.

scribed here "shocks the conscience." *See, Armstrong,* 152 F.3d at 570.

■ The first prong of the analysis can quickly be addressed because the Due Process Clause clearly protects against eighteen days of unlawful incarceration. *See Hunt v. Elkhart County Sheriff,* 95 F.Supp.2d 930, 937 (N.D.Ind.2000)(recognizing that the Due Process Clause protects against detention absent a court appearance for anything more than a "brief time")(citing *Coleman v. Frantz,* 754 F.2d 719 (finding that eighteen days of unlawful incarceration was not brief)).[16]

■■ The second prong of the inquiry requires the examination of whether the Defendants' offended the standards of substantive due process. *Armstrong,* 152 F.3d at 576. Of course, not all conduct is protected by the Constitution; indeed, negligence is insufficient to show a due process violation. Instead, the acts must rise to a level that shocks the conscience. *County of Sacramento v. Lewis,* 523 U.S. 833, 848–49, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In a jail setting, where the defendants have the luxury of forethought, a showing of deliberate indifference is sufficient to support a substantive due process claim. *Armstrong,* 152 F.3d at 576 (quoting *County of Sacramento,* 523 U.S. at 848–49, 118 S.Ct. 1708). After all, "when extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Armstrong,* 152 F.3d at 576–77 (quoting *County of Sacramento,* 523 U.S. at 848–49, 118 S.Ct. 1708). To prove this type of deliberate indifference, Johnson must show that the Defendants acted with a "conscious disregard of known or obvious dangers." *Armstrong,* 152 F.3d at 577

(quoting *West v. Waymire,* 114 F.3d 646, 651 (7th Cir.1997)).

Here, Johnson is presenting both official capacity and individual capacity claims against the Defendants. We begin by analyzing whether Johnson's official capacity claim offends the standards of substantive due process.

■ A claim against a government official in his official capacity is in reality a claim against the governmental entity. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). Because *respondeat superior* is not a recognized theory under § 1983, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 689, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), in order to prevail in an official capacity claim the Plaintiff must show that the alleged deprivation of a constitutional right is affirmatively linked to a governmental policy or custom. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105; *Hill v. Shelander,* 924 F.2d 1370, 1372 (7th Cir. 1991).

■ Perhaps in that vein, Johnson argues that the Sheriff's "will call" policy, the same policy that was demonstrative of an attitude of deliberate indifference in *Armstrong,* once again is at work here. *Armstrong,* 152 F.3d at 578–9. More particularly, the Sheriff apparently has no policy that matches an inmate to the disposition he received following his appearance in court on a body attachment; the upshot of this glaring deficiency is the obvious danger that an individual will be held where no civil commitment was ordered until he is called for by the court. Apparently, no one at the jail has the responsibility to identify the commitment term (or the absence of one) for such individuals,

16. The Due Process deprivations in these cases stem from extended incarceration prior to a court appearance, while Johnson's extended incarceration occurred after one. However, this distinction seemingly matters little given that Johnson effectively suffered the same type of deprivations described in *Hunt, Coleman,* and *Armstrong.* Indeed, the

protracted detention of a contemner arrested on a bench warrant, but who apparently has had no opportunity to be heard on the allegation (since his hearing was continued to a later date), violates the Due Process Clause and certainly resulted in the same loss of liberty. *See Armstrong,* 152 F.3d at 574–6.

and everyone simply relies on the "will call" policy to determine when an individual is to appear in court. This absence of a procedure or policy where one is clearly needed, such as verifying that the jail has authority to confine someone, is not only manifest, but also gives rise to at least an inference of deliberate indifference. *Armstrong*, 152 F.3d at 578–79.

Nonetheless, the Defendants contend that like *Armstrong*, their Inmate Request Forms provide a sufficient "backup plan" even if their "will call" policy is deficient. *See, Armstrong*, 152 F.3d at 579. As the theory goes, the inmates can simply bring any concerns regarding the length of their detention to the attention of jail authorities via these request forms and then everything will be corrected. *Id.* While that argument worked based on the facts of *Armstrong*, given that Johnson filled out at least fourteen inmate complaint forms and remained in jail after his out date suggests that his case of deliberate indifference is infinitely stronger. *Id.* Indeed, the recipients of Johnson's forms either ignored his requests, or gave him unhelpful or mocking responses, or outright wrong ones. This gives rise to at least an inference that the jail's so-called backup plan is no plan at all. While the evidence at trial might show that this apparent collapse of the "system" is anomalous, there may also be evidence that the jail authorities have simply gone from refusing Inmate Complaint Forms (as in *Armstrong* ) to simply now ignoring them or responding with superficial, or even taunting responses. As in *Armstrong*, this is tantamount to ignoring a reasonable request for medical care. *Id.* at 580. Therefore, there is an issue of fact as to whether the lack of policy violated the standards of due process, and as a result, Johnson's official capacity claims survive summary judgment.

▆ Johnson also alleges individual capacity claims against the confinement officers for their personal involvement in refusing to respond to his complaint forms,

or even checking on his out date status, with a resulting incarceration for an additional 18 days. To establish this claim, Johnson must show that the Defendants "caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996). Here, Johnson began inquiring about his out date on December 11, 1997 by sending Inmate Request Forms. Despite these repeated inquiries, the various confinement officers continually failed to investigate the situation, and instead gave Johnson either unhelpful or wrong information. Deliberate indifference can at least be inferred from this record.

On December 29, 1997, after Johnson had been incarcerated for ten days beyond his out date and after he had sent seven complaints, at least Nine made something of an attempt at verifying the authority to hold him. During Nine's call to the court, he was allegedly told that Johnson was to remain incarcerated until the court directed otherwise. (*See* Exh. A). This certainly cannot mean, as the Defendants suggest, that Johnson was actually being properly held, although it might be some evidence that at least Nine was not acting out of deliberate indifference. After all, keeping an inmate incarcerated after verifying the matter with a judicial staff person may not be the "conscious disregard of known or obvious dangers" necessary to show deliberate indifference. *See Armstrong*, 152 F.3d at 577. Nevertheless, a jury could decide that waiting eighteen (18) days after Johnson's first inquiry to even begin investigating his out date, and then relying on some unknown judicial staff person's statement to justify continued detention, is sufficient to show some measure of deliberate indifference. Therefore, this issue cannot be resolved on a motion for summary judgment.

Moreover, Johnson's inquiries regarding his release date did not end after Nine called the Court. Indeed, by the time he was ultimately released on January 6,

1998, he had sent fourteen complaints.[17] The number and tenor of these complaints obviously should have alerted the confinement officers that something was wrong and that further investigation was necessary. *See Armstrong*, 152 F.3d at 580 (An inmate's continuous protests provide an inference that the Defendants knew of a serious risk that the inmate was being improperly confined). Failure to conduct such an investigation raises a material issue of fact as to whether the Defendants acted with deliberate indifference and offended the standards of substantive due process. Therefore, this suggests that summary judgment should be denied on the individual capacity claims as well.[18]

The final part of the analysis is whether viewed in the totality of the circumstances the conduct of the Defendants in depriving Johnson of a constitutional right shocks the conscience. *Armstrong*, 152 F.3d at 581. This inquiry is a question of law. *Id.* Here, viewing the facts in a light most favorable to Johnson, he was held in Jail after December 19, 1997 without authority and the will call policy designed to prevent such things was deficient. Moreover, the arguable practice of ignoring of Johnson's Inmate Request Forms (or worse, mocking his requests) was, if true, "appalling" in the words of the Seventh Circuit. *See, Armstrong*, 152 F.3d at 582. Indeed, had Johnson's family not gained the ear of the court, Johnson could have been held for months without any authority. The totality of these circumstances, if supported by the evidence, "shocks the conscience." *Id.*

 Having found that issues of material fact remain as to whether the Defendants' conduct violates substantive due process, only one issue remains; namely, whether the confinement officers are entitled to qualified immunity. Indi-

vidual Defendants may receive qualified immunity if their conduct does not violate clearly established rights. *Armstrong*, 152 F.3d at 582 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Defendants assert that the Seventh Circuit had not yet ruled in *Armstrong* when the alleged deprivations occurred, and therefore, Johnson's rights were not clearly established at the time of the deprivations. Contrary to the Defendants assertions, however, Johnson clearly had an established right not to be incarcerated without any hearing adjudicating his contempt or even an order remanding him to custody. *See, e.g., Sample v. Diecks*, 885 F.2d 1099, 1114–15 (3d Cir.1989). Indeed, as noted *supra*, the very terms of the Body Attachment only gave the Defendants authority to "attach, and keep" Johnson *"until"* he could be brought before the court, it did not give them authority to detain him indefinitely. *See* Ind. Code § 34–4–9–2.1(c). Therefore, the individual Defendants are not entitled to qualified immunity.

Johnson also presents state law claims for false imprisonment and wrongful incarceration. The Defendants contend that they were following the judge's orders and therefore are immune from these state law claims. As explained *supra*, no court order existed allowing them to retain custody over Johnson, and thus this argument likewise fails. Therefore, the Defendants' motion for summary judgment on Johnson's state law claims will be denied as well.

## Conclusion

For the foregoing reasons, the Plaintiff's motion to strike is DENIED, the Defendants' motion for summary judgment is GRANTED as to the Plaintiff's claims un-

---

17. Apparently the only reason Johnson was released on January 6, 1998 was because his family contacted the court and obtained an order releasing him. It is unclear why the jail required an order from Judge Sims to release Johnson, since it apparently required no order to detain him.

18. We recognize that some of the confinement officers may be less culpable then others. However, that issue can be addressed at trial by way of a Fed.R.Civ.P. 50 motion at the close of the Plaintiff's case.

der the Fourth and Eighth Amendments, and DENIED as to the Plaintiff's Fourteenth Amendment claims and his claims under state law.