Kevin COLE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0704–CR–208.

Court of Appeals of Indiana.

Dec. 31, 2007.

Bruce E. Andis, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

After a police officer ordered Kevin Cole ("Cole") back into the car from which he had just exited, Cole fled on foot and then forcibly resisted the officer when the officer later caught up with him. Following Cole's arrest for resisting law enforcement, a pat down search revealed a handgun, and Cole was ultimately convicted of Count I: Carrying a Handgun Without a License as a Class C Felony, Count II:

Resisting Law Enforcement as a Class A Misdemeanor (by resisting), and Count III: Resisting Law Enforcement as a Class A Misdemeanor (by fleeing). On appeal, Cole argues that the officer did not have reasonable suspicion to stop him and therefore the handgun later found on his person must be suppressed pursuant to the exclusionary rule. Even assuming the officer did not have reasonable suspicion to order Cole back into the car, by fleeing from and forcibly resisting the officer, Cole committed two new criminal offenses. These actions purged the taint from the unconstitutional investigatory stop, making the exclusionary rule inapplicable. We therefore affirm Cole's convictions.

### Facts and Procedural History

On August 20, 2006, in the early evening, Indianapolis Police Department Officer Shane Decker ("Office Decker") was patrolling the 1400 Block of North King Avenue in Indianapolis, which is in an area known as Haughville, when he noticed a parked, white vehicle with several men standing around it and two men sitting inside. As Officer Decker drove by, some of the men slowly walked away. This behavior caught Officer Decker's attention. So, he parked his car on 12th Street, walked up King Avenue, and observed for fifteen to twenty minutes. During that time, Officer Decker noticed that one of the men who had walked away was outside the car again, leaning in and talking to the two men inside. Additionally, a few of the other men had returned and were standing on the sidewalk next to the car. Officer Decker watched a car pull up and stop alongside the white vehicle for a few moments. Shortly after another car did the same. While the cars were stopped, Officer Decker saw one of the men who was standing outside the white vehicle walk back and forth between it and each of the visiting cars. Moreover, Officer Decker observed a couple of people approach the white vehicle on foot, converse shortly with the men inside, and walk away.

Although Officer Decker did not see anything exchanged and merely saw the men in the white vehicle conversing with the various passersby, he called for backup, returned to his patrol car, and pulled up alongside the white vehicle. The men standing outside the vehicle dispersed as Officer Decker exited his car and asked the driver and Cole, who was seated in the passenger's seat, for their identification. At that time, Cole exited the car and began walking away. Officer Decker ordered Cole back into the car. Cole immediately stopped, turned around, and placed both of his hands on the roof of the car. As Officer Decker began to walk around the back of the car, Cole walked toward the front. Then, when Officer Decker walked the other direction, Cole did as well. So, Officer Decker again ordered Cole back into the car. Cole ran.

Officer Decker chased Cole on foot, continuously ordering him to stop and lie on the ground. Officer Decker and Cole fell, Officer Decker grabbed Cole, and Cole broke free by pushing Officer Decker away and continued to run through backyards and alleys. In the meantime, Officer Decker's backup, Officer Julian Wilkerson ("Officer Wilkerson"), arrived on the scene. As Cole ran into a front yard, Officer Wilkerson tasered him. Subsequently, Officer Decker handcuffed Cole, placed him under arrest for resisting law enforcement, and read him his *Miranda* rights. Although Officer Decker briefly patted Cole down, he did not perform a thorough pat down because Cole urinated on himself and Officer Decker did not have rubber gloves. However, once the wagon arrived to transport Cole, another officer performed a complete pat down and found

a loaded .22 caliber revolver in Cole's pocket.

Thereafter, the State charged Cole with Count I: Carrying a Handgun Without a License as a Class C Felony,[1] Count II: Resisting Law Enforcement as a Class A Misdemeanor (by resisting),[2] and Count III: Resisting Law Enforcement as a Class A Misdemeanor (by fleeing).[3] Before trial, Cole filed a motion to suppress the handgun. The trial court denied the motion, holding that watching people going back and forth between cars provided Officer Decker with reasonable suspicion that criminal activity was afoot. *See* Appellant's App. p. 31–33; Tr. p. 50–51. At his bench trial, Cole was found guilty of all three counts and sentenced to two years on Count I and one year each for Counts II and III, all sentences to be served concurrently on Community Corrections home detention. Cole now appeals.

## Discussion and Decision

■ On appeal, Cole contends that the trial court erred in denying his motion to suppress the handgun because Officer Decker did not have reasonable suspicion to order him back into the car and therefore the handgun later found on his person must be suppressed pursuant to the exclusionary rule under the Fourth Amendment to the United States Constitution.[4] Although Cole originally challenged the admission of the handgun through a pre-trial motion to suppress, he appeals following a completed bench trial and thus challenges the admission of such evidence at trial. Accordingly, "the issue is more appropriately framed as whether the trial court

abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003). Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied.* We also consider uncontroverted evidence in the defendant's favor. *Id.*

■ In *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind.2006). A *Terry* stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. *Id.* (citing *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185–89, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)).

■ Here, in light of the fact that Officer Decker did not observe any items exchanged during the fifteen to twenty minute time period but rather only saw the

---

1. Ind.Code §§ 35–47–2–1, –23(c)(2)(B). This charge was elevated to a Class C felony because Cole had been convicted of a felony within fifteen years of the date of this offense.

2. Ind.Code § 35–44–3–3(a)(1).

3. Ind.Code § 35–44–3–3(a)(3).

4. Notably, Cole does not argue what convictions should be reversed if we determine that the handgun should be excluded. For purposes of this opinion, we assume that Cole is asking us to reverse all of his convictions, not just his conviction for carrying a handgun without a license.

men in the white vehicle conversing with the various passersby, we doubt the propriety of the investigatory stop. However, we do not even need to decide whether Officer Decker had reasonable suspicion to stop Cole because Cole had no right to flee from and forcibly resist Officer Decker. As for resisting law enforcement by fleeing, Indiana Code § 35–44–3–3(a)(3) provides that a person who "flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop" commits resisting law enforcement. It is well settled that "[i]n Indiana, an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order." *Dandridge v. State*, 810 N.E.2d 746, 749 (Ind.Ct.App. 2004), *trans. denied; see also State v. Howell*, 782 N.E.2d 1066, 1067 (Ind.Ct. App.2003); *Lashley v. State*, 745 N.E.2d 254, 261 (Ind.Ct.App.2001), *trans. denied; Corbin v. State*, 568 N.E.2d 1064, 1065 (Ind.Ct.App.1991). On several occasions, this Court has noted that the resisting law enforcement statute does not condition the offense upon a lawful order. *Alspach v. State*, 755 N.E.2d 209, 211 (Ind.Ct.App. 2001), *trans. denied; Lashley*, 745 N.E.2d at 261; *Corbin*, 568 N.E.2d at 1065.

■ Although our appellate courts have applied this rule, we have not expounded upon its rationale. Other states have. For instance, the New Jersey Supreme Court recently explained:

[A]ny flight from police detention is fraught with the potential for violence because flight will incite a pursuit, which in turn will endanger the suspect, the police, and innocent bystanders. Cases abound in which a suspect's flight from the police set in motion an ensuing chase that resulted in death or serious injury either to a police officer, a suspect, or a bystander. For practical and public-policy-based reasons, constitutional decisionmaking cannot be left to a suspect in the street, even one who has done no wrong; a suspect cannot be the judge of his own cause and take matters into his own hands and resist or take flight. This reasoned approach encourages persons to avail themselves of judicial remedies, and signals that if a person peaceably submits to an unconstitutional stop the result will be suppression of the evidence seized from him.

*State v. Williams*, 192 N.J. 1, 926 A.2d 340, 347 (2007) (quotations and citations omitted). Because of the danger flight poses and the fact that a defendant has judicial remedies if he does not flee, the rule in our State is that even if a police officer does not have reasonable suspicion to stop a defendant, the defendant has no right to flee when the officer orders him to stop.

■ As for resisting law enforcement by forcible resistance, Indiana Code § 35–44–3–3(a)(1) provides that a person who "forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties" commits resisting law enforcement. Unlike resisting law enforcement by fleeing, the rationale for this rule is well developed in Indiana law. Indiana used to follow the common law rule that permitted an individual to resist an unlawful arrest with reasonable force. *See Heichelbech v. State*, 258 Ind. 334, 281 N.E.2d 102, 104 (1972); *Fields v. State*, 178 Ind.App. 350, 382 N.E.2d 972, 975–76 (1978), *reh'g denied*. However, Indiana now follows the modern view that a private citizen may not use force in resisting a peaceful arrest by an individual he knows, or has reason to

know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful. *Howell,* 782 N.E.2d at 1067–1068; *Shoultz v. State,* 735 N.E.2d 818, 823 (Ind.Ct.App.2000), *reh'g denied, trans. denied; Fields,* 382 N.E.2d at 975; *see also Row v. Holt,* 864 N.E.2d 1011, 1017 (Ind.2007) (acknowledging the rule in Indiana that a private citizen may not use force in resisting a peaceful arrest by an individual he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful). This is because a citizen can seek remedy for a police officer's unwarranted and illegal intrusion into the citizen's private affairs by bringing a civil action in the courts against the officer and the governmental unit that the officer represents. *Robinson v. State,* 814 N.E.2d 704, 708–09 (Ind.Ct.App.2004) (citing *Fields,* 382 N.E.2d at 975). In addition, the common law right of forceful resistance to an unlawful arrest tended to promote violence and increase the chances of someone getting injured or killed. *Id.* at 709 (citing *Fields,* 382 N.E.2d at 975).

Applying these principles to the present case, we conclude that even though Officer Decker may not have had reasonable suspicion to stop Cole, he did have probable cause to believe that Cole violated the resisting law enforcement statute by fleeing after being ordered to stop and by forcibly resisting him. Because Officer Decker had probable cause to arrest Cole for these crimes, it follows that the handgun was seized incident to a lawful arrest. Nevertheless, Cole appears to argue that the taint from the earlier unconstitutional stop was not extinguished by his lawful arrest for resisting law enforcement.[5] This question requires an examination of the exclusionary rule.

The exclusionary rule "is a judicially created remedy designed to safeguard" the right of the people to be free from "unreasonable searches and seizures." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). "The exclusionary rule doctrine protects citizens by deterring police misconduct by providing that evidence obtained through an illegal search and seizure is inadmissible at trial." *State v. Mason,* 829 N.E.2d 1010, 1019 (Ind.Ct. App.2005). However, "not all evidence is fruit of the poisonous tree and subject to suppression simply because it would not have come to light but for illegal police activity." *Quinn v. State,* 792 N.E.2d 597, 601 (Ind.Ct.App.2003), *trans. denied.* In some situations, the causal chain is sufficiently attenuated to dissipate any taint of an illegal stop, allowing the evidence seized during a search to be admitted. *Id.* In determining whether the attenuation doctrine applies, three factors are analyzed: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* (citing *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). "The important consideration in the third factor is whether the evidence came from the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (quotation omitted).

Here, in analyzing the first factor, we acknowledge that the time elapsed be-

5. In his brief, Cole relies on this Court's recent opinion in *Greeno v. State,* 861 N.E.2d 1232 (Ind.Ct.App.2007). However, we find *Greeno* readily distinguishable because the defendant in that case was not arrested for or charged with resisting law enforcement, which is what makes this case unique.

tween the illegal stop and the acquisition of the handgun was not significant. However, in considering the other two factors, it is clear that the taint of the illegal stop was sufficiently dissipated. As for the third factor, the purpose and flagrancy of the official misconduct, Officer Decker stopped Cole, who was in a high-crime area, on suspicion of drug activity based on the fact that several people approached the car in which Cole was sitting in a short period of time. In denying Cole's motion to suppress, the trial court believed that reasonable suspicion existed. Even though we may reach a different conclusion on appeal, Officer Decker's actions can hardly be described as flagrant. In any event, it is the second factor—the presence of intervening circumstances—that is dispositive in this case.

▅▅▅▅ Other courts in this country have held that eluding the police and resisting arrest in response to an unconstitutional stop or pat down constitute intervening acts and therefore the evidence seized incident to those intervening criminal acts will not be subject to suppression. *See Williams*, 926 A.2d at 349 (quoting *United States v. Bailey*, 691 F.2d 1009, 1017–18 (11th Cir.1982) ("[P]olice may legally arrest a defendant for a new, distinct crime, even if the new crime is in response to police misconduct and causally connected thereto. If the police lawfully have arrested a suspect, then they may properly conduct [a search incident to a lawful arrest]." (footnote omitted)); *Commonwealth v. King*, 389 Mass. 233, 449 N.E.2d 1217, 1225 (1983) ("[If] the driver had not attacked the investigating troopers, the evidence would be inadmissible as fruit of the poisonous tree. What distinguishes this case … is the … independent and intervening action of attacking the troopers. These acts broke the chain of causation and dissipated the taint of the prior illegal-

ity.")). The point of these cases is that the law should deter and give no incentive to suspects who endanger the police, themselves, and possibly others by not submitting to official authority. *See id.* A defendant should not have the right to use an improper stop as justification to commit a new and distinct crime of resisting law enforcement. *Id.* Rather, if a defendant merely stands his ground and resorts to the court for a constitutional remedy, then the unlawful stop will lead to the suppression of the evidence. *Id.*

As the New Jersey Supreme Court recognized in *Williams,* this approach balances both the right of the people to be free from unreasonable searches and seizures and their right to be free from the dangers created by suspects who physically resist the police and provides sufficient disincentives to deter both police misconduct and criminal misconduct by suspects. *Id.* As a result, "it would be farfetched to believe that police officers will attempt suspicionless investigatory stops or pat downs—to which the exclusionary rule applies—in the hope that a suspect will commit an independent crime that will be the basis for a lawful search." *Id.* at 350.

Cole's flight from Officer Decker after being ordered to stop and forcible resistance once Officer Decker caught up with him were intervening acts—the crimes of resisting law enforcement—that completely purged the taint from the unconstitutional investigatory stop. *See Quinn,* 792 N.E.2d at 603 ("In this case, where a stop was undertaken on less than reasonable suspicion, but with the purpose of executing a lawful outstanding arrest warrant, the trial court properly denied Quinn's motion to suppress because the intervening lawful arrest was sufficient to remove the taint of any police illegality."). Because the officers seized the handgun incident to a lawful arrest, the trial court properly

admitted the handgun into evidence at trial. We therefore affirm Cole's convictions.[6]

Affirmed.

BAKER, C.J., and BAILEY, J., concur.

**6.** Although Cole addresses Article I, Section 11 of the Indiana Constitution in his brief, it is only with respect to whether the stop of him was reasonable. *See* Appellant's Br. p.

11. As discussed above, we reach the result in this case based on the assumption that the investigatory stop was unconstitutional.