Charles YOWLER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0803–CR–171.

Court of Appeals of Indiana.

Oct. 8, 2008.

William F. Thoms, Jr., Thoms & Thoms, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Following a bench trial, the trial court convicted Appellant–Defendant Charles Yowler of one count of Resisting Law Enforcement, a Class A misdemeanor,[1] and one count of Disorderly Conduct, a Class B misdemeanor.[2] Yowler challenges the sufficiency of the evidence to support his convictions and claims that the arresting officer's conduct was outrageous and should therefore excuse Yowler's conduct. We affirm the convictions.

### FACTS AND PROCEDURAL HISTORY

On April 30, 2007, Indianapolis Public School ("IPS") # 82, Christian Park Elementary, sent Yowler a "bar letter" stating that he was banned from the school's property. When Yowler arrived at IPS # 82 to have lunch with his son on May 21, 2007, the school's principal, Margaret Myers, reminded him that he was not allowed on the property. Yowler became very irate and claimed that he had never received a "bar letter." Yowler was yelling and using profanity in front of children. Although

---

1. Ind.Code § 35–44–3–3 (2006).

2. Ind.Code § 35–45–1–3 (2006).

Myers allowed Yowler to have lunch with his son, she also called the police.

Indianapolis Metropolitan Police Officer Michelle Hacker soon arrived and told Yowler that he was banned from school property. Yowler again became irate and belligerent, using profanity and threatening to call the media. Yowler left the school but stated that he would return at 3:00 p.m. to pick up his son.

After Yowler left, a copy of the "bar letter" was faxed to the school, and Officer Hacker went to Yowler's home to personally serve him with the letter. When Officer Hacker arrived at Yowler's home, Yowler was in the home but did not answer the door. Yowler's girlfriend arrived at the home, told Officer Hacker that Yowler was not home, and entered the home. Officer Hacker opened the screen door and placed the letter inside, stated, "[Y]ou've been served," and started to walk back towards her vehicle. Tr. p. 23. Yowler emerged, blocked Officer Hacker's path, spat in her face and called her a number of vulgar names. Officer Hacker told Yowler to back away as she attempted to move away from Yowler. Yowler stood very close to Officer Hacker's face and continued calling her vulgar names and spitting. Officer Hacker "smacked" Yowler, retrieved her taser, and radioed for back up. Tr. p. 25. Yowler began to pace in his front yard, flailing his arms, and continued to call Officer Hacker vulgar names. Officer Hacker repeatedly told Yowler to calm down, but he continued to yell, causing neighbors to emerge from their homes.

At some later point, Yowler attempted to walk away. Officer Hacker told Yowler to stop, but Yowler began running, in spite of Officer Hacker's orders. Officer Hacker subsequently tasered Yowler, causing him to fall onto the sidewalk. Yowler continued to scream while another IPS officer tried to handcuff him. Officer Hacker tasered Yowler a second time after he refused to place his hands behind his back.

On May 24, 2007, the State charged Yowler with battery by bodily waste (Count I), two counts of resisting law enforcement (Counts II and III), and disorderly conduct (Count IV). Prior to trial, the State dismissed Count I. Following a February 19, 2008, bench trial, the trial court found Yowler guilty of resisting law enforcement by fleeing (Count II) and disorderly conduct (Count IV) and acquitted him of Count III. The trial court entered judgment of conviction and sentenced Yowler to consecutive sentences of 365 days, with 355 days suspended to probation, for resisting law enforcement (Count II); and to 180 days, with 170 days suspended to probation, for disorderly conduct (Count IV).

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

On appeal, Yowler challenges the sufficiency of the evidence to support his convictions for resisting law enforcement and disorderly conduct. Our standard of review for sufficiency-of-the-evidence claims is well-settled. We do not reweigh the evidence or judge the credibility of the witnesses. *Kien v. State*, 782 N.E.2d 398, 407 (Ind.Ct.App.2003), *trans. denied.* We consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* It is the function of the trier of fact to resolve conflicts of testimo-

ny and to determine the weight of the evidence and the credibility of the witnesses. *Jones v. State*, 701 N.E.2d 863, 867 (Ind.Ct.App.1998).

### A. Disorderly Conduct

██ Indiana Code section 35–45–1–3(a)(2) provides that a person commits disorderly conduct if that person "recklessly, knowingly, or intentionally makes unreasonable noise and continues to do so after being asked to stop." Here, Yowler contends that he did not make unreasonable noise, claiming that the sight of the police cars, not his yelling, caused his neighbors to come out of their homes. For purposes of the disorderly conduct statute, noise is unreasonable if it is too loud for the circumstances. *See Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind.1996).

In *Hooks v. State*, 660 N.E.2d 1076, 1077–78 (Ind.Ct.App.1996), *trans. denied*, this court sustained a defendant's conviction for shouting at a police officer because the State presented evidence that the defendant's screaming was loud enough to be heard across the street by neighbors. Similarly, in *Blackman v. State*, 868 N.E.2d 579, 584 (Ind.Ct.App.2007), *trans, denied*, this court upheld a defendant's conviction for disorderly conduct because the defendant's yelling at police officers attracted a crowd and caused neighbors to emerge from their homes.

Here, Yowler flailed his arms and yelled, he used profanity, he directed vulgar names at Officer Hacker, and he continued to yell after being asked to stop by Officer Hacker. Further, Officer Hacker specifically testified that Yowler caused a disturbance sufficient to cause his neighbors to come out of their homes. Yowler's assertion that his noise was not unreasonable is merely an invitation to reweigh the evidence, which we decline to do. Therefore, we conclude the evidence was sufficient to prove that Yowler's noise was unreason-

able for the circumstances to support a finding of disorderly conduct.

### B. Resisting Law Enforcement by Fleeing

██ In order to prove that Yowler committed resisting law enforcement by fleeing, as charged in Count II, the State was required to prove that he: (1) knowingly or intentionally, (2) fled from a law enforcement officer, (3) after the officer had, by visible or audible means, identified himself or herself, (4) and ordered the defendant to stop. Ind.Code § 35–44–3–3(a)(3). Yowler claims that he did not have a duty to stop because he was never told he was under arrest. The statute, however, contains no such requirement. In fact, a defendant, if ordered to do so, does have a duty to stop. *Cole v. State*, 878 N.E.2d 882, 886 (Ind.Ct.App.2007), *trans. denied.*

Here, Officer Hacker testified that she instructed Yowler not to leave his home while she waited for assistance. Despite Officer Hacker's instructions, Yowler continued to walk away. Officer Hacker, who was in full uniform, ordered Yowler to stop, but Yowler began running and continued to run, even after Officer Hacker's second order to stop. Because Yowler was ordered to stop by a police officer multiple times, but did not stop and instead began to run, we conclude the State produced sufficient evidence to sustain his conviction for resisting law enforcement under Indiana Code Section 35–44–3–3(a)(3).

### II. Outrageous Conduct

██ Yowler also claims that Officer Hacker's conduct was outrageous and should therefore excuse his conduct. Yowler alleges that Officer Hacker's conduct in serving the "bar letter," refusing to leave Yowler's property, slapping Yowler in the face, and shooting Yowler twice with a laser constitutes "outrageous conduct."

Further, Yowler claims that his actions were caused by Officer Hacker's conduct.

First, as Yowler acknowledges, the defense of "outrageous conduct" by law enforcement officers has not been recognized in Indiana. Moreover, adopting such an exception to the offense of resisting law enforcement would be inconsistent with Indiana precedent. "It is well settled that '[i]n Indiana, an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order.'" *Cole*, 878 N.E.2d at 886 (quoting *Dandridge v. State*, 810 N.E.2d 746, 749 (Ind.Ct.App.2004)), *trans. denied.* Further, pursuant to *Cole*, "[o]n several occasions, this Court has noted that the resisting law enforcement statute does not condition the offense upon a lawful order." *Id.* Therefore, under the *Cole* reasoning, an "outrageous conduct" defense is incompatible with the crime of resisting law enforcement as it is contemplated under Indiana law.

In any event, the evidence most favorable to the trial court's judgment indicates that Officer Hacker's conduct was not outrageous. At the request of Principal Myers, Officer Hacker served Yowler with the school's "bar letter," conduct the trial court specifically found to be within the scope of her duties. After Yowler became confrontational and failed to follow orders, Officer Hacker slapped Yowler. The evidence indicates that Officer Hacker was acting to protect herself and to effect a lawful arrest. Yowler's claim of outrageous conduct is without merit.

The judgment of the trial court is affirmed.

RILEY, J., and BAILEY, J., concur.