David A. SHOTTS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0808–CR–400.

Court of Appeals of Indiana.

March 12, 2009.

Anthony V. Luber, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Matthew Whitmire, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### OPINION

CRONE, Judge.

#### Case Summary

David A. Shotts appeals his conviction for class C felony carrying a handgun without a license with a prior felony. The dispositive issue is whether the trial court abused its discretion by admitting evidence seized from Shotts's person when Indiana police executed an Alabama arrest warrant. We reverse.

#### Facts and Procedural History

On August 16, 2007, Detective Pete Hose of the Madison County Sheriff's Department in Huntsville, Alabama contacted Detective Randy Kaps of the St. Joseph County Police Department. Detective Hose explained that an arrest warrant had been issued for Shotts one day earlier and that he believed Shotts was in Mishawaka. Detective Kaps accessed the National Crime Information Computer ("NCIC") and confirmed that there was an active Alabama arrest warrant for Shotts. He then asked two officers with the St. Joseph County Warrant Division—Corporal Daniel Wisniewski and Trooper Mike Robinson—to execute the Alabama arrest warrant. The officers used BMV information to locate Shotts's vehicle, which was parked behind a Mishawaka apartment complex. Having been informed that Shotts might possess firearms and body armor, the officers placed the SWAT team on standby while Detective Kaps went to the police station to prepare a search warrant for entry into Shotts's apartment. In the meantime, Corporal Wisniewski and

Trooper Robinson watched Shotts walk out of the apartment building, get into his car, and begin to exit the parking lot. They blocked his path and arrested him, at which time they discovered a revolver in a holster on Shotts's hip.

On August 18, 2007, the State charged Shotts with class A misdemeanor carrying a handgun without a license and class C felony carrying a handgun without a license with a prior felony. On January 8, 2008, Shotts filed a pretrial motion to suppress, alleging that the officers took him into custody without a valid warrant. The State argued that the Alabama arrest warrant was valid, and alternatively, that the good faith exception to the exclusionary rule salvaged the evidence.

Following a hearing on the motion to suppress, the trial court issued an order on April 2, 2008, stating in pertinent part as follows:

1. On August 16, 2007, ... officers from St. Joseph County Police Department and Indiana State Police Department arrested the defendant, pursuant to an active warrant from the State of Alabama, which Warrant is attached hereto and made a part hereof as "Exhibit A." The officers arrested him in good faith based upon a valid warrant issued by another State.

2. The Court declines to find the warrant is insufficient under Indiana Law.

3. Further, although there was conflicting testimony as to whether the "NCIC" system sufficiently indicated that the warrant was active on that date, detectives involved where [sic] in personal contact with the authorities from the State of Alabama, who indicates [sic] the war-

rant was, in fact, valid, active, and that they would extradite the defendant.

Accordingly, the defendant's Motion to Suppress is denied.

Appellant's App. at 59. Shotts waived his right to a jury trial. During his bench trial, Shotts stipulated to the arrest warrant, probable cause affidavit, booking photograph, crime lab report, case action summary indicating his prior felony conviction, and certified booking photograph from the prior conviction. He preserved his claim of error, however. On May 2, the trial court found him guilty as charged. On May 28, 2008, the trial court entered a judgment of conviction for the class C felony. Shotts now appeals.

## Discussion and Decision

 Shotts first challenged the admission of evidence through a motion to suppress but now appeals following a completed trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003). A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We will not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Cole v. State*, 878 N.E.2d 882, 885 (Ind.Ct.App.2007). We also must consider uncontested evidence favorable to Shotts. *See id.*

The Fourth Amendment to the United State Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," but "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans*, 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). Long ago, the U.S. Supreme Court established an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial. *See, e.g., Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The purpose of the exclusionary rule "is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

Shotts argues that the police violated his rights pursuant to the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution by acting on a facially defective arrest warrant and that the evidence seized during his arrest should have been excluded as a result. In response, the State first contends that the exclusionary rule is inapplicable here because the Alabama arrest warrant was in fact valid. Pursuant to the Fourth Amendment and Article 1, Section 11, a warrant shall not issue without probable cause supported by oath or affirmation. *Doss v. State*, 649 N.E.2d 1045, 1047 (Ind.Ct.App.1995). In this case, a Madison County, Alabama, magistrate issued the arrest warrant based upon the following affiant statement:

Before me, THE UNDERSIGNED, Warrant Magistrate of Madison County, personally appeared this day [*INV. D. HASTY*] and made oath that he/she has probable cause for believing and does believe, that before the filing of this complaint, [*DAVID ANDREW SHOTTS*] **whose name is not known to the affiant other than as stated, did** receive,

retain, or dispose of stolen property, [48 AMD PROCESSORS], the property of [BENCHMARK ELECTRONICS], of the value of [$19,858.00], knowing that it was stolen or having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation of 13A–8–17 of the Code of Alabama, which said offense was committed against the peace and dignity of the State of Alabama.

State's Exh. 1.

Shotts directs us to a case in which our supreme court considered a similar affidavit. In *Kinnaird v. State,* 251 Ind. 506, 242 N.E.2d 500 (1968), the defendant argued that the affidavit filed in support of his arrest warrant was insufficient to establish probable cause. The affidavit read as follows:

> Marion Deckard being duly sworn upon oath says, that at the County of Clark, in the State of Indiana, on or about the 24th day of February, 1967, Charles "Sonny" Kinnaird did then and there commit the crime of theft of the property of Everett Page, doing business as Federal Window and Awning Company in that he knowingly, unlawfully and feloniously obtained control over said property, to-wit: One Radial arm saw, One grinder, two paint spray guns, one set acetyline torches and gauge, one transit and tripod, and one sabre saw, all of the value of $616.00, knowing that said property had been stolen by another, to-wit: Lee Redd and Richard L. Sheckles, intending to deprive the owner permanently of the use of said property, being then and there, contrary to the form of statutes in such cases made and provided and against the peace and dignity of the State of Indiana.

*Id.* at 501. In Kinnaird, our supreme court held that "an affidavit which merely states the conclusion of the affiant is insuf-

ficient to establish probable cause." *Id.* at 505 (citing *Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (holding that commissioner should not accept without question affiant's mere conclusion that person whose arrest is sought has committed a crime)). The affidavit must be supported by enough of the underlying facts and circumstances to allow a neutral and detached magistrate to draw his own conclusion as to the existence of probable cause. *Id.* at 506. Our supreme court concluded that "the affidavit falls far short of the constitutional standards required by the Fourth Amendment" because it "merely alleges that the appellant engaged in unlawful conduct." *Id.* The court also held that the trial court had committed reversible error by admitting evidence seized when the warrant was served upon the defendant. *Id.*

We agree with Shotts that, like the affiant in *Kinnaird,* the Alabama affiant merely *alleged* that Shotts had committed a crime, in this case receiving, retaining, or disposing of stolen property. The affiant did not provide any facts from which a neutral magistrate could have drawn his own conclusion as to the existence of probable cause. Thus, the arrest warrant is invalid pursuant to the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution.

█ Alternatively, the State argues that if the warrant is constitutionally invalid, then the "good faith exception" applies to save the evidence seized during Shotts's arrest. It is true that the exclusionary rule does ·not automatically apply each time a search and seizure technically violates the Fourth Amendment. As the U.S. Supreme Court explained, "Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defen-

dants offends basic concepts of the criminal justice system." *United States v. Leon*, 468 U.S. 897, 907–08, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Our good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances. *Id.* at 922 n. 23, 104 S.Ct. 3405. If the answer is no, then the evidence, though seized illegally, is admissible. Suppression is appropriate if: (1) the magistrate or judge who issued the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) the issuing magistrate wholly abandoned his neutral judicial role; (3) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Id.* at 923, 104 S.Ct. 3405.

■ The State claims that because the Indiana officers executed the arrest warrant without actually seeing it, they cannot be charged with knowledge of any defects and thus must have acted in good faith. Our inquiry is not limited merely to the law enforcement officers who execute the warrant, however. Clearly, the Indiana officers in this case were acting in good faith, but what about the Alabama officer who obtained the warrant in the first place?[1] There is no question that he knew or should have known that his testimony was insufficient to support a probable cause determination. Objectively speaking, the affidavit was so lacking in indicia of probable cause as to render official belief in the warrant's validity entirely unreasonable. To allow law enforcement to insulate the State from the operation of the exclusionary rule by simply creating one degree of separation between the officer acting in bad faith and the officer executing the warrant would serve no deterrent effect whatsoever. Thus, based upon this officer's actions, the good faith exception does not apply in this case.

Even as the U.S. Supreme Court continues to limit the application of the exclusionary rule, focusing upon "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence[,]" it still appears that the facts of this case would trigger operation of the federal rule. *See Herring v. U.S.*, 555 U.S. ——, 129 S.Ct. 695, 702, 172 L.Ed.2d 496 (2009).[2] Just as the U.S. Supreme Court focused on the record management system in Herring, in this case the bad faith occurred prior to the information being submitted to NCIC and the executing officers.

Moreover, the evidence is clearly inadmissible pursuant to our Indiana constitutional analysis, which places the burden on the State to demonstrate that each relevant intrusion was reasonable in light of

---

1. In analyzing the applicability of the exclusionary rule, we must consider the actions of *all* the police officers involved, from the warrant's creation to its execution. *Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. 3405 ("It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination.").

2. As recently noted by the U.S. Supreme Court, a police officer could not "obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Herring*, 129 S.Ct. at 703–04 (quoting *Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. 3405).

the totality of the circumstances. *See, e.g., Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006) ("As we consider reasonableness based upon the particular facts of each case, the Court also gives [Article 1, Section 11] a liberal construction to angle in favor of protection for individuals from unreasonable intrusions on privacy.") Although Article 1, Section 11 derives from and shares nearly the same language as the Fourth Amendment, our supreme court has stated that it will interpret and apply Section 11 independently from Fourth Amendment jurisprudence. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). To the extent that the U.S. Supreme Court is limiting the viability of the exclusionary rule pursuant to the Fourth Amendment, we are not convinced that our supreme court will follow suit and diminish safeguards historically recognized pursuant to Article 1, Section 11 of the Indiana Constitution.

In sum, the Alabama arrest warrant was clearly deficient on its face, resulting in a search and seizure of Shotts's person that violated his rights under the Fourth Amendment and the Indiana Constitution. The exclusionary rule applies, and the police conduct falls outside the good faith exception to the exclusionary rule. Therefore, the trial court abused its discretion in admitting the evidence seized during Shotts's arrest. Consequently, we reverse Shotts's conviction.

Reversed.

ROBB, J., and BROWN, J., concur.