Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 05 2012, 8:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**G. ALLEN LIDY**
Roscoe Stovall, Jr. & Associates
Mooresville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH J. SUSCHA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 06A01-1203-CR-95 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Rebecca McClure, Judge
Cause No. 06D02-1105-FD-300

**October 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Joseph J. Suscha appeals his convictions for class D felony Resisting Law Enforcement[1] and class A misdemeanor Operating While Intoxicated[2] (OWI). He presents the following consolidated and restated issues for review:

1.  Did the officer, who was not in uniform and was driving an unmarked vehicle, have authority to stop Suscha?

2.  Did the trial court abuse its discretion by allowing a jury view of the unmarked police vehicle used in the stop?

3.  Did the trial court improperly refuse a proposed jury instruction?

4.  Is Suscha's sentence inappropriate?

We affirm.[3]

The facts favorable to the convictions are that on a clear day around noon on May 12, 2011, Lebanon Police Detective William Scott was on a lunch break with his wife. He was in civilian clothing and was driving an unmarked police vehicle. Detective Scott turned onto eastbound Anderson Lane and began driving behind Suscha in a residential area.

Detective Scott (and his wife) soon observed Suscha drive his vehicle left of center a couple times. Thereafter, Suscha's vehicle went completely into the westbound lane. Suscha continued traveling eastbound in the westbound lane despite two individuals on mopeds heading directly toward him. The drivers of the mopeds had to take evasive action, quickly splitting and going on either side of Suscha, to avoid being hit head-on. Detective Scott

---

[1] Ind. Code Ann. § 35-44.1-3-1 (West, Westlaw current with all 2012 legislation) (formerly Ind. Code Ann § 35-44-3-3).
[2] Ind. Code Ann. § 9-30-5-2 (West, Westlaw current with all 2012 legislation).
[3] We caution Suscha's counsel to review our appellate rules regarding appendices, as the appellant's appendix is woefully lacking in this case. Of particular note, counsel failed to include "the Clerk's Record, including the chronological case summary" (Ind. Appellate Rule 50(B)(1)(a)), the jury instruction proffered by Suscha,

observed Suscha's vehicle come "within inches" of striking the mopeds. *Transcript* at 149. Another vehicle behind the mopeds slowed or stopped to avoid colliding with Suscha's vehicle. At that point, Suscha "swerve[d] in somewhat of an aggressive manner" back into the eastbound lane.

Upon witnessing the near collision, Detective Scott activated his siren and in-car lights.[4] Suscha then immediately accelerated and sped through an intersection disregarding a stop sign and driving above the posted speed limit. After going less than half a mile with Detective Scott in pursuit, Suscha encountered a ninety degree turn in the road. Unable to negotiate the turn, Suscha ended up in someone's front yard, nearly striking a tree and mailbox.

Detective Scott pulled along the passenger side of Suscha's vehicle with his lights and siren still activated, and Suscha put his vehicle in reverse. Detective Scott quickly exited his vehicle and started pounding on the window, while Suscha continued in reverse. Suscha stopped once his vehicle entered back onto the roadway. When Suscha opened his door, Scott detected a strong odor of alcoholic beverage coming from within the vehicle. Detective Scott asked Suscha for his driver's license, which Suscha provided, and then called dispatch for uniformed assistance.

---

and the presentence investigation report. Although our review was hampered by these omissions, we will exercise our discretion and address the merits of this appeal.

[4] Detective Scott was driving a silver Ford Crown Victoria that was equipped with red and blue police lights in the front and back windows.

3

Officer Jeff Nelson responded within six or seven minutes of being dispatched and, after speaking with Detective Scott, took over the scene. Officer Nelson observed signs of intoxication and unsuccessfully attempted to have Suscha perform standard field sobriety tests. Officer Nelson transported Suscha to the Boone County Sheriff's Office, where a certified breath test taken at 12:53 p.m. resulted in a reading of .23 grams of alcohol per 210 liters of breath (BAC). Officer Nelson then placed Suscha under arrest for OWI.

Later that day, Detective Scott spoke with Kent Eastwood of the Boone County Prosecutor's Office regarding potential charges against Suscha. Detective Scott discussed criminal recklessness, OWI, and resisting law enforcement. Ultimately, the State charged Suscha with OWI and resisting law enforcement. Shortly before his scheduled jury trial, Suscha sought to have the charge of resisting law enforcement dismissed and evidence resulting from the stop suppressed. The trial court denied these motions following a hearing.

On December 7, 2011, a jury found Suscha guilty as charged. Thereafter, the trial court sentenced him to consecutive terms of one and one-half years for resisting and one year for OWI. The court suspended all but the time Suscha had already served and placed him on probation. Suscha now appeals.

1.

Suscha's initial argument is based on his claim that Detective Scott did not have authority, according to I.C. § 9-30-2-2 (West, Westlaw current with all 2012 legislation), to initiate a stop because he was not in uniform or driving a marked police vehicle.

I.C. § 9-30-2-2 provides:

A law enforcement officer may not arrest or issue a traffic information and

4

summons to a person for a violation of an Indiana law regulating the use and operation of a motor vehicle on an Indiana highway or an ordinance of a city or town regulating the use and operation of a motor vehicle on an Indiana highway unless at the time of the arrest the officer is:
> (1) wearing a distinctive uniform and a badge of authority; or
> (2) operating a motor vehicle that is clearly marked as a police vehicle;
that will clearly show the officer or the officer's vehicle to casual observations to be an officer or a police vehicle. This section does not apply to an officer making an arrest when there is a uniformed officer present at the time of the arrest.

In light of this statute, we have held that an officer not in uniform or driving a marked police vehicle is "precluded from conducting a traffic stop and effectuating either an arrest or simply an investigatory stop" for violation of a law regulating the use and operation of a motor vehicle. *Davis v. State*, 858 N.E.2d 168, 172 (Ind. Ct. App. 2006). It is undisputed that Detective Scott was not in compliance with I.C. § 9-30-2-2 and therefore could not stop Suscha for a Title 9 traffic violation. This, however, does not end the inquiry. As the trial court properly observed, criminal recklessness is a crime set out in Title 35 of our criminal code and is not a law regulating the use and operation of a motor vehicle under Title 9. *See Thompson v. State*, 702 N.E.2d 1129, 1131-32 (Ind. Ct. App. 1998) ("[t]he criminal recklessness statute is not a law regulating the use and operation of a motor vehicle"). Criminal recklessness is defined to include: "a person who recklessly, knowingly, or intentionally performs…an act that creates a substantial risk of bodily injury to another person". Ind. Code Ann. § 35-42-2-2(b) (West, Westlaw current with all 2012 legislation). Further, the offense is elevated from a class B misdemeanor to a class A misdemeanor "if the conduct includes the use of a motor vehicle". I.C. § 35-42-2-2(c)(1).

Prior to initiating the stop in the instant case, Officer Scott observed Suscha drive on

the wrong side of the road and directly toward two approaching mopeds. As set forth above, the mopeds narrowly missed being struck head-on by Suscha's vehicle only because the mopeds split and went around either side of the vehicle. Another vehicle behind the mopeds also had to slow or stop to avoid being hit. Based upon these observations, Detective Scott had probable cause to stop Suscha for criminal recklessness.[5] As a result, Officer Scott was not limited by I.C. § 9-30-2-2.

Moreover, Suscha also committed resisting law enforcement by fleeing,[6] a crime for which Detective Scott had the authority to stop and arrest Suscha. Once Detective Scott activated his lights and siren, thereby ordering Suscha to stop, Suscha had no right to flee regardless of whether the stop was in violation of § 9-30-2-2. *See Cole v. State*, 878 N.E.2d 882, 886 (Ind. Ct. App. 2007) ("resisting law enforcement statute does not condition the offense upon a lawful order"); *Dandridge v. State*, 810 N.E.2d 746, 749 (Ind. Ct. App. 2004) ("an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order"), *trans. denied*.

---

[5] Our conclusion is unaffected by the fact that Suscha was not ultimately charged with criminal recklessness. "The facts and circumstances of which the arresting officer has knowledge that provide probable cause to believe a crime has been committed need not relate to the same crime with which the defendant is ultimately charged." *Sears v. State*, 668 N.E.2d 662, 667 n.10 (Ind. 1996).

[6] I.C. § 35-44.1-3-1(a) provides in relevant part that a person who knowingly or intentionally "flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop" commits resisting law enforcement. The offense is elevated to a class D felony if the person uses a vehicle to commit the offense. I.C. § 35-44.1-3-1(b)(1)(A).

6

Under the circumstances of this case, the trial court properly determined that, even though he was not in uniform or driving a marked police vehicle, Detective Scott had the authority to stop Suscha for criminal recklessness and resisting law enforcement. Thus, the trial court did not err in denying Suscha's motion to dismiss and motion to suppress evidence resulting from the stop, which were both based upon a claim that the stop was statutorily unauthorized.

2.

Suscha contends that the trial court abused its discretion by allowing the jury to view Detective Scott's unmarked police vehicle and listen to its siren (for less than a minute) while the jury stood inside the courthouse doors. In his brief and undeveloped argument, Suscha claims this was not a proper "jury view" as allowed by Indiana Jury Rule 25 because "[n]o where in [the rule] does it say the court may allow the jury to 'listen' to the thing being viewed." *Appellant's Brief* at 15.

Jury Rule 25 provides:

> When the court determines it is proper, the court may order the jury to view:
> (a)    The real or personal property which is the subject of the case; or
> (b)    The place in which a material fact occurred.
> The place shall be shown to the jury by a person appointed by the court for that purpose. While the jury is absent for the view, no person, other than the person appointed to show the place to the jury, shall speak to the jury on any subject connected with the trial. Counsel for the parties shall have the right to accompany the jury but shall not speak to the jury.

In essence, Suscha asserts that because the rule is silent regarding the jury's ability to listen to the personal property being viewed, in addition to seeing it, the trial court is not authorized to allow such a "viewing." This argument is not well-taken. There is nothing in the rule that

7

would preclude the trial court from allowing the jury to listen to the siren during the viewing.

Moreover, Suscha directs us to no authority to support his assertion that the jury may not listen to the property being viewed.[7]  Suscha has failed to establish error in this regard.

3.

Suscha contends that the trial court erred in rejecting his proposed jury instruction, which was apparently[8] a verbatim recitation of I.C. § 9-30-2-2.  Suscha complains that he was precluded from arguing to the jury that Detective Scott did not have authority to conduct the traffic stop.

It is well established that jury instruction is left to the sound discretion of the trial court.  *Treadway v. State*, 924 N.E.2d 621 (Ind. 2010).

> When evaluating the jury instructions on appeal this Court looks to whether the tendered instructions correctly state the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions. We will reverse a conviction only if the appellant demonstrates that the instruction error prejudices his substantial rights.

*Id.* at 636 (citations omitted).

---

[7] To the extent Suscha argues that the trial court allowed the viewing to be used as substantive evidence, we observe that the trial court admonished the jury:  "the view that you had yesterday of the police car is not to be considered by you as evidence.  It is simply intended to aid your understanding of the evidence that you will hear in the course of this trial." *Transcript* at 273.

We note further that in making this argument, counsel for Suscha relies upon an unpublished memorandum decision of this court.  We wish to remind counsel that pursuant to Indiana Appellate Rule 65(D): "Unless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish res judicata, collateral estoppel, or law of the case."

[8] We say "apparently" because Suscha has not favored us with a copy of the proposed instruction, and said instruction was not set out fully in the transcript.

The State acknowledges that the instruction tendered by Suscha was a correct statement of the law and was not covered by other instructions. The issue is whether there was evidence in the record to support giving the instruction. As we have already determined, Detective Scott had legal authority to stop and arrest Suscha for criminal recklessness and resisting law enforcement. Thus, I.C. § 9-30-2-2 did not apply to the facts of this case.

Further, we agree with the State that "at its heart, the argument which Suscha wished to make to the jury based on this instruction, *i.e.*, that he had been illegally seized by the officer, was an admissibility of evidence issue which was for the trial court to decide." *Appellee's Brief* at 8 (footnote omitted). To be sure, simply because an instruction tracks the language of a statute or case law does not make it proper for a jury instruction. *Short v. State*, 962 N.E.2d 146 (Ind. Ct. App. 2012). "[A]dmissibility is to be determined by the court, not the jury." *Id.* at 150. *See also Brown v. State*, 417 N.E.2d 333, 339 (Ind. 1981) (the law upon which the defendant wanted the jury instructed "concerns the issue of admissibility and this issue is to be resolved by the court, not the jury"). There was no error with respect to the trial court's refusal of Suscha's instruction on I.C. § 9-30-2-2.

4.

Finally, Suscha contends that his aggregate suspended sentence of two and one-half years is inappropriate. He asks that we revise his sentence to concurrent one-year suspended terms and order the trial court to enter judgment as a class A misdemeanor on the resisting law enforcement count.

We have the constitutional authority to revise a sentence if, after careful consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of

9

the offense and character of the offender. *See* Ind. Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Even if a trial court follows the appropriate procedure in arriving at its sentence, we maintain the constitutional power to revise a sentence we find inappropriate. *Hope v. State,* 834 N.E.2d 713 (Ind. Ct. App. 2005). Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). The burden of persuading us that the sentence is inappropriate is on the defendant. *Rutherford v. State,* 866 N.E.2d 867.

We initially observe that Suscha has failed to provide us with the presentence investigation report (PSI) filed in this case and referred to throughout the sentencing hearing. Inasmuch as his argument relies on information contained in the PSI, his failure to include the document in the record on appeal clearly hampers our ability to consider his argument and review the sentencing decision. *See Nasser v. State*, 727 N.E.2d 1105 (Ind. Ct. App. 2000) (finding that the defendant waived sentencing argument because he failed to include the PSI in the record), *trans. denied*.

As for his character, Suscha notes that, at age fifty-eight, this is his first conviction. While this is evident from our review of the transcript, we observe that Suscha fails to note that he was out on bond for pointing a firearm at the time he committed the instant offenses. Further, he subsequently violated bond in this case, too. Thus, the evidence as to Suscha's character is not as pristine as he would have us believe, and we are not privy to the rest of the

information contained in the PSI.[9]

With respect to the nature of the offense, Suscha merely asserts, "no one was injured" and "the 'resist' lasted mere seconds and occurred at unknown speeds over a quarter mile". *Appellant's Brief* at 18. This is not a full and fair characterization of the events in question. The fact that Suscha did not injure or kill multiple motorists when he was driving while intoxicated at nearly three times the legal limit is simply fortuitous. As noted previously, he drove in the wrong lane straight towards two individuals on mopeds, and a vehicle following behind the mopeds had to slow or stop in order to avoid being struck. After these near misses, Suscha chose to resist law enforcement by accelerating in a residential area to speeds greater than the posted limit and disregarding a stop sign, involuntarily stopping only when he was unable to negotiate a turn and ended up in someone's yard.

Suscha has failed to establish that his aggregate sentence is inappropriate in light of his character and the nature of the offense. Therefore, we affirm the sentence imposed by the trial court.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.

---

[9] To the extent Suscha asserts that he is mentally and physically disabled and holds a bachelors degree, we observe that he directs us to no evidence in the record supporting these assertions.